Samuel Reale, Esq.
HELMER, CONLEY & KASSELMAN, P.A.
600 Beverly Rancocas Road
Willingboro, NJ 08046

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AFFINITY HEALTHCARE GROUP VOORHEES, LLC, and DR. KENNETH BROWN, | **CASE NO.:** _____ |
| *Plaintiffs,* | |
| vs. | |
| THE TOWNSHIP OF VOORHEES, VOORHEES TOWNSHIP ZONING BOARD, TOWNSHIP ZONING OFFICER JACLYN BRADLEY, AND VOORHEES TOWNSHIP PLANNING BOARD, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| *Defendants.* | |

## COMPLAINT

Plaintiffs **Affinity Healthcare Group Voorhees, LLC** ("Affinity") and **Dr. Kenneth Brown, M.D.**, file this action seeking declaratory and injunctive relief, as well as damages, against Defendants **Township of Voorhees** ("Voorhees"); **Voorhees Township Zoning Board; Township Zoning Officer Jaclyn Bradley;** and **Voorhees Township Planning Board** (Collectively "the Defendants"). Plaintiffs assert claims under the United States Constitution, *U.S.C.* Section 1983; the Americans with Disabilities Act, 42 *U.S.C.* 12101 ("ADA"); and *Section 504 of* The Rehabilitation Act of 1973, 29 *U.S.C.* 793. Additionally, Plaintiffs assert claims under the New Jersey State Constitution of 1947; the Law Against Discrimination (LAD), *N.J.S.A.* 10:5-1 to -49; and the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D-1 to -163. Plaintiffs also

seek to recover damages for the harm they have suffered individually and collectively as a result of Defendant's intentional discriminatory actions and interference with Plaintiffs' permitted business activities.

## I.   **INTRODUCTION**

1.     Drug abuse is wreaking havoc on public health and safety in communities across the United States.

2.     More than 2,000,000 Americans are opioid-dependent according to the 2019 National Survey of Drug Use and Health Report.

3.     On December 17, 2020, the Centers for Disease Control and Prevention (CDC) issued a health alert network advisory reporting on the nationwide increase in fatal drug overdoses secondary to the CoVid 19 pandemic.

4.     Opioid addiction is a debilitating and life-threatening disease, which, if left untreated, poses a serious risk to the health, safety and well-being of the victim, his/her family and the community in which he/she resides.

5.     Unfortunately, the overdose rate in New Jersey is three times the national average and nearly 90% of the reported drug overdose deaths in New Jersey involved opioids.

6.     In an effort to recognize and combat this growing epidemic, the New Jersey Legislature declared:

> The human suffering and social and economic loss caused by drug addiction are matters of grave concern to the people of the State and it is imperative that a comprehensive program be established and implemented through the facilities of the State, the several counties, the Federal Government and local and private agencies to prevent drug addiction and to provide diagnosis, treatment, care and rehabilitation for drug addicts to the end that these unfortunate individuals may be restored to good health and again become useful citizens in the community.
> *N.J.S.A.* 30:6C-1.

7.     Affinity is an out-patient treatment provider as defined by both the United States and the State of New Jersey.  Affinity provides a range of treatment services and treatment modalities, including, but not limited to, medication-assisted treatment (MAT) and other "standard of care" methadone maintenance treatment options for opioid dependence.

8.     MAT helps those individuals suffering from Opioid Use Disorder (OUD) stop using narcotics by blocking withdrawal symptoms and the physical craving for other opioids.

9.     MAT utilizing methadone has been used as the primary form of treatment for opiate addiction and dependence for over 40 years.

10.     The Center for Disease Control has recognized MAT as the most effective form of treatment for adults suffering from opioid dependence.

11.     The National Institute of Health similarly named MAT the "gold standard" for opioid treatment.

12.     Opioid Treatment Programs (OTPs) – regulated by the Food and Drug Administration until 2001 – are now regulated by the Center for Substance Abuse Treatment ("CSAT") and the Drug Enforcement Agency ("DEA") and are licensed by the state in which the program is located.

13.     Among the variety of treatment options, Affinity provides an Opioid Treatment Program (OTP) pursuant to which there is the dispensing of an opioid agonist treatment medication, including methadone, Buprenorphine and/or other approved medications, along with a comprehensive range of medical and rehabilitative services, when clinically necessary and in compliance with State regulations, to an individual to alleviate the adverse medical, psychological, or physical effects incident to opiate addiction.  With respect to the OTP offered by Affinity, the treatment options include comprehensive maintenance treatment.

14.     In connection with the services Affinity provides, opioid treatment is a medical service offered at a licensed outpatient facility that adheres to the guidelines established by SAMHSA, NIH, CDC, CMS, and the FDA and which utilizes methadone, Suboxone or other approved medications to maintain substance abusers addicted to heroin or other opiate-like drugs. Medication is provided in conjunction with medical monitoring, laboratory testing, clinical assessment, counseling and support services.   This care approximates ASAM Level 1Opiate Maintenance Therapy.

15.     Affinity's mission is to provide a community-based recovery facility that utilizes all the above-mentioned treatment options to treat patients suffering from opioid addiction.

16.     To fulfill this mission, Affinity has attempted to open a medical practice and facility at 200 West Somerdale Road, located within the Office 1 Zoning District of the Township of Voorhees.   Critical to its treatment model's success, Affinity locates its facilities in or near communities in which its patients live, thereby ensuring that those individuals maintain contact with their peers in recovery and successfully reintegrate into daily life without losing access to treatment providers.

17.     The Zoning Ordinance adopted by the Defendant Township of Voorhees creates a series of zoning districts within the municipality. The Defendant Township of Voorhees has established certain "uses" it deems appropriate and permitted for each particular zoning district.

18.     Among the aforesaid Zoning Districts described in Paragraph 17, *supra*, is the Office 1 Zoning District. Created pursuant to *Section* 152.051, the permitted uses within the zoning district are set forth in *Section* 152.052.  Adopted by the Township of Voorhees, on September 13, 1999, *Section* 152.052, Permitted Uses, provides, as relevant to this Action, the following: "(A) Offices of a recognized profession, including but not limited to medicine, social services, fiancé,

accounting, insurance, real estate, law, engineering, architecture and planning, but not to include other licensed professions, such as barbering, general contracting or public movers." (Voorhees Township Ordinance 945-99).

19.     The Office 1 Zoning District includes the property located at 200 West Somerdale Road, within the Defendant Township.

20.     On or about March 20, 2018, Mid-America, the owner of 200 West Somerdale Road, also known as Voorhees Commons, submitted a zoning permit application to the Voorhees Township Zoning Office on behalf of Dr. Brown.  The application sought a zoning permit in the name of Dr. Kenneth Brown; the proposed use was identified as a "Medical Office."  Thereafter, Affinity provided a copy of its Scope of Services, including its intention to utilize Methadone, to the aforesaid Zoning Office for its use in evaluating the pending application.  Through this submission, Affinity and Dr. Brown voluntarily disclosed to the Township of Voorhees the nature of the proposed treatment program and their intention to utilize all approved forms of MAT, including Methadone, in treating patients.

21.     On March 28, 2018, the Township of Voorhees' Zoning Officer issued a Zoning Permit, Permit No.: Z2018-0211, to Plaintiff Dr. Brown, a member of Plaintiff Affinity and its co-Medical Director, authorizing him to operate a "professional office providing behavioral health services on an outpatient basis" from the property located at 200 West Somerdale Road. Behavioral health services are described by NJDOH, CDC, and SAMHSA as the administration of FDA-Approved medications, including methadone, buprenorphine, and naloxone, in combination with counseling services, to treat those suffering from OUD.  The afore-described 2018 Zoning Permit contained no conditions that Plaintiff Dr. Brown would have to meet prior to opening his medical practice.

22.     In issuing the 2018 Zoning Permit described in Paragraph 21, *supra*, the then Township Zoning Officer specifically determined that further review by the Planning Board or the Zoning Board was "not applicable."

23.     On March 2, 2020, in an email communication from Defendant Jaclyn Bradley, the current Voorhees Township Zoning Officer, the Township acknowledged the 2018 Zoning Permit's continued validity.

24.     On September 24, 2018, the Township of Voorhees' Construction Official issued a Certificate of Occupancy permitting Plaintiff Dr. Brown to occupy and operate from the 200 West Somerdale Road location.

25.     As is relevant to the instant action, on December 5, 2018, Affinity submitted its initial Outpatient Substance Use Disorder Treatment Facility License application for an opioid treatment program to the New Jersey Department of Health (NJDOH).

26.     In connection with and as part of the NJDOH application review process, Affinity received a copy of the Department of Health's Certificate of Need and Licensing – Behavior Health Licensure Application Evaluation Findings, entitled *Licensure Application Evaluation Findings To Be Licensed Under N.J.A.C. 10:161B*, dated September 9, 2019.

27.     Among the findings reported by the NJDOH, as part of the afore-described September 9, 2019 Findings, described in Paragraph 25, *supra*, was one, identified as Reference #68, under the subheading of "Opioid Treatment Services."  Specifically, the finding set forth at Reference #68 contained a requirement that Affinity notify the "governing authority of the municipality of the full scope of services, including opioid treatment to be provided at the facility.

28.     On November 12, 2019, to satisfy the notice requirement described in Paragraph 27, *supra*, Affinity had a copy of its 2018 Early Survey Application to the Commission on

6

Accreditation of Rehabilitation Facilities (CARF), along with a description of the outpatient treatment program Affinity will be offering at their facility, delivered to Defendant Lawrence A. Spellman, Esq., Voorhees' Township Administrator, at his office located at the Township of Voorhees municipal building, located at 2400 Voorhees Town Center, Voorhees, New Jersey 08043.

29.     The delivery of the program description, as described in Paragraph 28, *supra*, was the second time Affinity provided the Township of Voorhees with materials describing the scope of service, as previously noted at Paragraph 20, *supra*.

30.     A further finding reported by the NJDOH Department of Health, as part of the afore-described September 9, 2019 Findings identified in Paragraph 26, *supra*, as a part of Reference #68, was a requirement that Plaintiff Affinity, prior to the issuance of the license, provide the State with a Certificate of Occupancy, here in the form of a Zoning Permit, bearing the notation "Opioid Treatment Program."

31.     To satisfy the second requirement contained in the finding set forth at Paragraph 30, *supra*, simultaneous with the delivery of the scope of services identified in Paragraph 28, *supra*, to the Township Administrator, Affinity submitted an application to Defendant Jaclyn Bradley, the Township Zoning Officer, seeking an amendment of the afore-described 2018 Zoning Permit to include the descriptive language requested by the NJDOH; specifically, Affinity sought the simple amendment of adding "opioid treatment services" to the existing Permit.

32.     Beginning on or about November 12, 2019, to comply with the licensing requirement of the New Jersey Division of Addiction Services, Affinity attempted to obtain a Zoning Permit issued in its name, to provide the identical services to those that Dr. Brown is

permitted to offer under the abovementioned Zoning Permit, including the ability to offer methadone as a therapeutic alternative.

33.     Between on or about November 12, 2019, and on or about February 6, 2020, Affinity attempted to secure the issuance of the amended Zoning Permit from the Township of Voorhees, its Zoning Officer and the Zoning Board's Solicitor, Christopher Norman, Esq.  Those efforts included the filing of a third Zoning Permit Application on December 10, 2019, and efforts to satisfy the Township's Zoning Officer and Board Solicitor's ever-changing demands and requirements.

34.     On or about December 11, 2019, as pertinent to the instant action, Jaclyn Bradley, transmitted an email communication to Affinity notifying the applicant that its amendment constituted a significantly different change of use than what was previously permitted on the site (referencing the 2018 Permit issued to Dr. Brown) and, pursuant to *Section* 156.018 of the Voorhees Land Ordinance, Affinity would be required to apply to the Township of Voorhees Planning Board for a review of the proposed change of use.

35.     As a direct result of Jaclyn Bradley's notification, as contained in her email communication of December 11, 2019, as described in Paragraph 34, *supra*, and notwithstanding its proposed operations are identical to that of Dr. Brown, Affinity was compelled to undertake the preparation and submission of an application seeking review of the proposed change of use, pursuant to the provisions of *Section* 156.018, which application was filed on or about February 6, 2020.

36.     As pertinent to the instant action, the application filed with the Township of Voorhees' Planning Board did not seek approval of a Use Variance, pursuant to the provisions of *N.J.S.A.* 40:55D-70d; rather, the application was filed under Subsection A of *Section* 156.018, of

the municipality's land use ordinance, which provides, "[a] zoning permit and certificate of conformance must be obtained for every change of use of any non-residential premises, whether due to the sale of the entire premises or change in tenant or occupant of all or any portion of the premises, unless the new owner/tenant/occupant will continue the exact same use or extremely similar to the immediate prior use."   As part of the application process, Affinity sought a waiver of site plan review pursuant to Subsection D of *Section* 156.018.

37.     The hearing before the Voorhees Township Planning Board on Affinity's  Change of Use Review Application, afore-described in Paragraphs 34 and 35, *supra*, was delayed from its initial hearing date of March 11, 2020, as a result of the CoVid 19 pandemic.  The initial hearing, conducted through a video conferencing platform, did not occur until July 22, 2020.

38.     Affinity was forced, via the change of use review, to appear before the Voorhees Township Planning Board on four (4) separate occasions between the months of July and October 2020.  During these meetings, numerous Board Members behaved unprofessionally; such behavior included but was not limited to: sleeping, leaving the room during pivotal testimony, driving vehicles, and eating.

39.     Additionally, the Chairman of the Voorhees Township Planning Board did not fulfill his duties, as presiding officer, in protecting Affinity's rights to be heard and present their case in a manner they best see fit; unfounded objections by the Planning Solicitor Stuart Platt, Esq., made it impossible for Affinity to present two key expert witnesses certified to practice addiction medicine, such testimony was to be presented to explain to the Planning Board the scope of services medical providers such as Affinity offer to their patients.  Still further, the Board Chairperson and Board Solicitor actively prevented Affinity from addressing the essential core issue germane to a change of use review pursuant to *Section* 156.018, that is, the fact that the

9

services provided are by definition part6 of the medical profession and constitute a medical practice.

40.     As part of the review process utilized by land use boards in New Jersey, Affinity's Change of Use Application was submitted to the Township of Voorhees' Planning Board Engineer, Rakesh Darji, of Environmental Resolutions, Inc., for review and comment.

41.     On or about March 6, 2020, Rakesh Darji, in his official capacity as Planning Board Engineer, authored a letter report that made no mention of or analysis of the pending application under the Change of Use Review provisions of *Section* 156.018 or the standards applicable to the application. In fact, Mr. Darji constructed the report in such a way as to convert the change of use review application into one seeking a use variance under the enhanced proof requirements of *N.J.S.A.* 40:55D-70d; specifically, Mr. Darji opines, in clear contravention to the Zoning Permit issued in 2018 for Dr. Brown, that Affinity "…should provide testimony indicating how the 'medical practice providing outpatient behavioral health opioid treatment services' is consistent with the permitted uses listed above."

42.     After the four (4) public hearings identified in Paragraph 38, *supra*, on October 14, 2020, and contrary to the expert testimony of two physicians certified to practice addiction medicine, the Voorhees Township Planning Board determined that the services provided to patients by Affinity does not constitute the practice of medicine and thereby denied Affinity's application for approval of its operations as part of the change of use review required by the Township of Voorhees, pursuant to the provisions of *Section* 156.018.

43.     After "hearing" all the evidence, the Township of Voorhees Planning Board denied Affinity's application based on discriminatory reasoning and thinly-veiled pretext. Simply stated,

this case presents the familiar conflict between the legal principle of non-discrimination and the political principle of not-in-my-backyard.

44. Ignoring the intent of its land-use laws, which allow applicants the issuance of a Zoning Permit for a use identical to or extremely similar to those approved immediately prior, the Defendant Township of Voorhees, its officials, Planning Board, and Board professionals have wrongfully burdened Affinity with unnecessary roadblocks and months of superfluous hearings that were filled with unprofessional conduct and multiple examples of discriminatory comments, which ultimately resulted in a wrongful denial of Affinity's application. The Planning Board's stated reasons for denying the Plaintiff's application were irrelevant and contradictory to the Township of Voorhees' Land Use Ordinance and amounted to blatant pretext to hide discriminatory intent.

45. Still further, the Planning Board has failed to adopt a memorialized resolution reflecting the denial, in violation of *N.J.S.A.* 40:55D-10, which requires a memorialized resolution at a meeting no later than 45 days of the voting decision, which failure constitutes further evidence of a blatant discriminatory intent as the failure to adopt the resolution obstructs and delays Affinity's ability to seek a review of the Planning Board's action through the initiation of a Complaint in lieu of Prerogative Writ in the Superior Court of New Jersey, pursuant to *Rule* 4:69-1, *et seq.*, of the New Jersey Court Rules.

46. To further its discriminatory objectives, the Township of Voorhees, its officials, Planning Board, and Board Professionals have delayed life-saving treatment desperately needed by Affinity's prospective patients who reside in and around the Township of Voorhees, jeopardized Affinity's significant investment in the facility, and caused Affinity and its prospective patient to suffer immediate and irreparable harm.

47.    Through these series of unnecessary roadblocks and egregious behaviors, Defendants have done everything in their collective power to delay, hinder, and, ultimately, prevent the opening of said treatment facility. By delaying indefinitely, the critical lifesaving treatment of individuals suffering from Substance Use Disorders, the Defendants are causing irreparable harm to the protected class of individuals so suffering from Use Disorders: citizens of the State of New Jersey and in its' own community.

48.    Evidence that the Defendants have embarked on a course of conduct designed and implemented to improperly hinder Affinity is found in the Township of Voorhees' actions in connection with the 2017 approval of a Zoning Permit for an Opioid Treatment Program that is also located within the O-1 Office Zoning District.

49.    On or about January 10, 2017, Recovery Centers of America (RCA), as a new tenant, received an approved Zoning Permit, Permit No.: Z2017-0024, to provide professional services including medical, social services and psychological services on an outpatient basis for individuals suffering from drug and alcohol addiction at 526 Burnt Mill Road, in the Township of Voorhees and located within the Township's Office-1 Zoning District.

50.    A review of the application submitted on behalf of RCA to Elaine Powell, the then Township Zoning Officer, dated January 11, 2017, establishes that the proposed use was to be a "Professional Medical and Social Service Office." The resulting Zoning Permit afore-described in Paragraph 49, *supra*, contained the following description of the proposed use: "Professional Office providing professional services including medical, social services and psychological services on an outpatient basis for individuals suffering from drug and alcohol addiction."

51.    The RCA Zoning Permit Application afore-described in Paragraph 49, *supra*, also establishes that Zoning Officer Powell reviewed the RCA Application with Stuart Platt, Esq., the

12

Voorhees Township Planning Board Solicitor, when it was determined that the proposed use was permitted within the Office-1 Zoning District.

52.     Still further evidence of the Township of Voorhees' disparate treatment of Affinity is the fact that, on or about January 19, 2017, and on or about February 6, 2017, in response to two (2) separate requests by the State of New Jersey's licensing authorities, Elaine Powell, in her capacity as Zoning Officer, acknowledged that RCA's facility, being registered with the State of New Jersey as a Narcotic Treatment Program, was located in the Office-1 Zoning District and that the "dispensing of controlled dangerous substances was a permitted use within the zone" and endorsed the representation that RCA's facility would be "utilized on an outpatient basis in which some patients will be receiving opioid treatment by either receiving Vivitrol or Suboxone."

53.     Unlike Affinity's experience, RCA was not required to navigate hurdles or suffer the machinations of the Zoning Officer or Zoning Board Solicitor when requested by the State of New Jersey to provide additional information.

54.     Unlike Affinity's experience, at no point in the zoning permitting process was RCA required to seek any Planning Board review, neither was it required to participate in any hearing process, notwithstanding the provisions of *Section* 156.018.

55.     In analyzing the disparate treatment of Affinity and RCA, while both facilities offer treatment for those individuals suffering Opioid Use Disorder and utilize FDA-approved medications in the treatment of individuals suffering from OUD, the difference is that Affinity proposes to offer patients the full range of MAT treatment options, including, where necessary, Methadone.

56.     The Township of Voorhees' records establish that the Township, its officials, Boards, and Board professionals have engaged in a pattern or course of conduct designed,

13

intended, and executed to discriminate against those patients, who being in active treatment for Opioid Use Disorder, require treatment that includes the administration of Methadone.

57.     Plaintiffs bring this action to challenge Defendants' refusal to issue Affinity a Zoning Permit for a medical practice and facility within the jurisdiction of the Township of Voorhees providing opioid treatment, including, but not limited to Medication Assisted Treatment (MAT).  Affinity sought the issuance of the Zoning Permit to provide comprehensive, medically supervised, and licensed outpatient medical/opioid treatment directed at rehabilitating persons living in the Township of Voorhees and its surrounding community who require the treatment to alleviate their diagnosis of opioid dependency (DSM-5).

58.     Prospective patients of Affinity, individuals suffering from Opioid Use Disorder, are qualified individuals with disabilities within the meaning of the ADA, 42 *U.S.C.* 12101, and Section 504 of the Rehabilitation Act of 1973, 29 *U.S.C.* 701, 794.

59.     Plaintiffs contend that their rights to provide and their patients' rights to access the complete standard of care in the treatment of their (the Patients') Opioid Use Disorder through the utilization of Methadone, as necessary, are protected pursuant to the ADA, the Rehabilitation Act, and that those protected rights are being violated by the Defendants.

60.     This action follows.

## II.     JURISDICTION AND VENUE

61.     This action is brought pursuant to the Americans with Disabilities Act, 42 *U.S.C.* 12101, and Section 504 of the Rehabilitation Act of 1973, 29 *U.S.C.* 794.

62.     This Court has jurisdiction over this action pursuant to 28 *U.S.C.* 1331, 1337, 1343(a), and 1391(b)(2); 29 *U.S.C.* 794(a). and 42 *U.S.C.* 12182 (a).

14

63.     This Court has supplemental jurisdiction over the State claims set forth herein, pursuant to 28 *U.S.C.* 1367(a), as the other claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

64.     Venue is proper under 28 *U.S.C.* 1391(b)(1) & (2) because Defendants are residents of this judicial district, the events or omissions giving rise to the claims set forth herein occurred in this judicial district, and a substantial part of the property that is the subject of the action is situated in this judicial district.

## III.     APPLICABLE STATUTES AND LAND USE ORDINANCES

65.     The American with Disabilities Act ("ADA") provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the service, program, or activity of a public entity, or be subjected to discrimination by any such entity. The ADA makes it unlawful for a public entity, in determining the site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination. 28 *C.F.R.* 35.130 (b)(4).

66.     The Rehabilitation Act, 29 *U.S.C.* 791, provides that no qualified individual with a disability shall, solely by reason of her or his disability, be excluded from participation in or be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance. 29 *U.S.C.* 794(a). Section 508 of the Act defines "programs or activity" as "all of the operations" of specific entities, including "a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 *U.S.C.* 794(b)(1)(A).  The Act puts in place a general prohibition against discrimination on the basis of

disability by public entities. Further, the Act is meant to protect disabled individuals from deprivations based on prejudice, stereotypes, or unfounded fear. State agency activity and municipal zoning qualify as a public "program" or "service," as those terms are employed in the ADA, and the enforcement of those rules is an "activity" of a state agency or local government.

67.     The <u>New Jersey Law Against Discrimination</u> ("NJLAD"), *N.J.S.A.* 10:5-1 *et seq.*, prohibits a "municipality, county or other local civil or political subdivision of the State of New Jersey, or an officer, employee, or agent thereof to exercise the power to regulate land use or housing in a manner that discriminates" on the basis of disability. *N.J.S.A.* 10:5-12.5. Disability means "physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness" or "any mental, psychological or developmental disability … resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically," *N.J.S.A.* 10:5-5(q), which definition has been construed by the courts to include substance dependence.

68.     *Section* 152.052, <u>Permitted Uses</u>, of the Land Use Ordinance establishes those uses permitted within the Office-1 Zoning District. As pertinent to the instant action, *Section* 152.052(A) provides that the permitted uses include: "Offices of a recognized profession, including but not limited to medicine, social services, finance, accounting, insurance, real estate, law, engineering, architecture and planning, but not to include other licensed professions, such as barbering, general contracting or public movers." (Voorhees Township Ordinance 945-99).

69.     *Subsection A of Section* 156.018 of the Land Use Ordinance of the Township of Voorhees establishes the procedures associated with a review of a change of use. Specifically, the

16

section provides, "[a] zoning permit and certificate of conformance must be obtained for every change of use of any non-residential premises, whether due to the sale of the entire premises or change in tenant or occupant of all or any portion of the premises, unless the new owner/tenant/occupant will continue the exact same use or extremely similar to the immediate prior use." Pursuant to *Section* 156.018 of the Voorhees Land Ordinance, a Planning Board review and approval for any proposed changes of use subject to the *Section* must be completed prior to the issuance of a corresponding Zoning Permit.

## IV.    APPLICABLE CASE LAW

70.    The United States Circuit Courts of Appeal, including the Third Circuit, have declared that it is unlawful to treat Methadone Clinics differently than medical offices for zoning purposes. *New Directions Treatment Serv. v. City of Reading*, 490 *F. 3d* 293 (3d Cir 2007); *MX Group, Inc. v. City of Covington*, 293 *F 3d* 326 (6th Cir. 2002); and *Bay Area Addiction Research and Treatment Inc. v. City of Antioch*, 179 *F. 3d* 725 (9th Cir. 1999).

71.    United States District Courts have also weighed in on the issue, including the United States District Court for the District of Maine (1st Circuit) wherein the Court held, in *Metro Treatment of Me. V. City of Bangor*, Docket No.: 1:16-cv-00433-JAW; 2016 U.S. Dist. LEXIS 157619 at 24 (D. Me. 2016), a methadone clinic cannot be treated differently than a medical clinic. Similarly, the United States District Court for the Northern District of Illinois (7th Circuit) has held, in *Buonauro v. City of Berwyn*, Case: 1:08-cv-06687 JSC (D. N. Ill. 2012) that a zoning provision that discriminates against methadone clinics violates the ADA even if it merely provides a location restriction rather than an outright ban, and even if the provision offers a process for relief from that restriction.

17

72. Similar results have been reached by State Courts, in the 2014 decision in *THW Group, LLC v. Zoning Board of Adjustment*, 86 *A. 3d* 330 (Comm. Ct. PA 2014), interpreting the ADA and Section 504 and applying the Circuit Court of Appeals decisions identified in Paragraph 70, *supra*, explained that municipalities are not free to apply different zoning standards to methadone clinics than to ordinary medical clinics.

73. As pertinent to the issues presented in the instant action, the Superior Court of New Jersey, Appellate Division, has long recognized the unity between physicians and their medical practices. *L & L Clinics, Inc., et al., v. Town of Irvington*, 189 *N.J. Super.* 332 (App. Div. 1983). Still further, the *L & L Clinics'* Court rejected, "as unreasonably restricted," an interpretation of a municipality's land use ordinance that resulted in an "exclusionary interpretation" of permitted uses in the refusal to issue a Certificate of Occupancy to a "medical professional office" providing a professional office for use as a clinical facility for methadone maintenance treatment of heroin addicts. *Supra, at* 189 *N.J. Super.* 332, 335-337.

## V.    **PARTIES**

74. **Plaintiff Affinity Healthcare Group Voorhees, LLC ("Affinity")** is a New Jersey Limited Liability Company organized and registered pursuant to the laws of the State of New Jersey, with its principal office located at 200 West Somerdale Road, Voorhees, New Jersey 08034. Affinity has direct standing to bring this action.

75. **Plaintiff Dr. Ken Brown, M.D., (Dr. Brown)** is a physician licensed to practice medicine in New Jersey by the New Jersey Board of Medical Examiners and has his principle business address as 200 West Somerdale Road, Voorhees, New Jersey 08034. Dr. Brown is a Member of Affinity and serves as its co-Medical Director.

76.   **Defendant Township of Voorhees (Voorhees)** is a political subdivision of the State of New Jersey with its principal offices being located at 2300 Voorhees Town Center, Voorhees, New Jersey 08043 and is governed under the Township form of New Jersey municipal government.

77.   **Defendant Voorhees Township Zoning Board (Zoning Board)** was created and established by the Defendant Township Committee to interpret the zoning provisions of the Defendant Township's Code of Ordinances, hearing applications for appeals and variances from the said zoning provisions, and such other duties as may from time to time be assigned to it by the Township Committee, pursuant to the provisions of *Section* 156.004 of the Defendant Township's Code of Ordinances.  Pursuant to *Section* 156.006(B)(2) of the Defendant Township's Code of Ordinances, the Zoning Board may employ, or contract for, and fix the compensation of legal counsel, other than the Township Solicitor, and experts and other staff and services as it shall deem necessary, not exceeding, exclusive of gifts or grants, the amount appropriated by the Township Committee for its use.  At all times relevant to this action, the aforesaid Zoning Board employed the services of Christopher J. Norman, Esq., to serve as its solicitor.

78.   **Defendant Jaclyn Bradley, Voorhees Township Zoning Officer (Zoning Officer)**, is appointed by the Defendant Township Committee, pursuant to *Section156*.037 of the Defendant Township's Code of Ordinances.  The Zoning Officer's duties, pursuant to *Section* 156. 037, as relevant to the instant action, include, inter alia "to interpret this chapter in accordance with its literal intent[;] … [t]o be responsible for issuing permits … [including] Zoning permits[,] a document signed by the Zoning Officer (1) which is required by this chapter as a condition precedent to the commencement of a use … and (2) which acknowledges that such use …complies

with the provisions of this chapter or a variance therefrom duly authorized by the Planning Board or Zoning Board of Adjustment pursuant to *N.J.S.A.* 40:55D-1 *et seq.*"

79. **Defendant Voorhees Township Planning Board (Planning Board)** was created and established by the Defendant Township Committee, pursuant to *Section* 156.001 of the Defendant Township's Code of Ordinances. Pursuant to the provisions of *Section* 156.005 of the Defendant Township's Code of Ordinances, and as relevant to the instant action, the Planning Board shall have the power to (1) prepare, maintain, adopt and administer the master plan; (2) prepare, maintain, and administer the subdivision, site plan, and zoning ordinances; (3) and hear and decide applications made pursuant thereto. Pursuant to *Section* 156.003(A)(4) of the Defendant Township's Code of Ordinances, the Planning Board may employ, or contract for, and fix the compensation of legal counsel, other than the Township Solicitor, and experts and other staff and services as it shall deem necessary, not exceeding, exclusive of gifts or grants, the amount appropriated by the Township Committee for its use.

**VI.   STATEMENT OF FACTS**

**200 WEST SOMERDALE ROAD, THE PROPOSED LOCATION OF AFFINITY'S FACILITY, IS ZONED FOR MEDICAL OFFICES UNDER VOORHEES TOWNSHIP ZONING ORDINANCES.**

80. The Zoning Ordinance adopted by the Defendant Township of Voorhees creates a series of zoning districts within the municipality. The Defendant Township of Voorhees has established certain "uses" it deems appropriate and permitted for each particular zoning district.

81. Among the aforesaid Zoning Districts described in Paragraph 80, *supra*, is the Office 1 Zoning District. Created pursuant to *Section* 152.051, the permitted uses within the zoning district are set forth at *Section* 152.052. Adopted by the Township of Voorhees, on September 13, 1999, *Section* 152.052, <u>Permitted Uses</u>, provides, as relevant to this Action: "(A)

Offices of a recognized profession, including but not limited to medicine, social services, fiancé, accounting, insurance, real estate, law, engineering, architecture and planning, but not to include other licensed professions, such as barbering, general contracting or public movers." (Voorhees Township Ordinance 945-99).

82.     The Office 1 Zoning District includes property located at 200 West Somerdale Road, within the Defendant Township; the property is further identified as Voorhees Commons, which is owned and managed by Mid America Corporation.

### AFFINITY'S FACILITY, AN OUTPATIENT OPIOID TREATMENT PROGRAM, IS A MEDICAL OFFICE (IDENTICAL TO OR EXTREMELY SIMILAR TO DR. BROWN AND ANOTHER FACILITY'S PERMITTED USES IN THE ZONING DISTRICT); THUS, IT IS UNLAWFUL FOR DEFENDANT'S TO TREAT THEM DIFFERENTLY FOR ZONING PURPOSES.

83.     Effective with the issuance of the Zoning Permit, dated March 28, 2018, as identified in Paragraph 21, *supra*, Dr. Brown was permitted by the Township of Voorhees to open a medical practice and, as part of that practice, to treat patients suffering from various addictions, including, but not limited to, those suffering from Opioid Use Disorder (OUD). Further, as part of his practice, Dr. Brown was permitted to utilize and implement MAT to the extent authorized by Federal or State licensing authorities, including administering and/or dispensing of opioid agonist medications and related medical services to his patients, as medically necessary.

84.     Affinity, of which Dr. Brown is a member in addition to serving as its Medical Director, provides medical treatment to those suffering from various addictions, including, but not limited to those suffering from OUD. Further included within Affinity's Scope of Service is the offering of medical maintenance to those suffering from OUD, which is defined as the administration and/or dispensing of opioid agonist medications and related medical services to a client who has been referred from an opioid treatment program to a designated physician providing

services either in the treatment facility (that is, clinic-based) or in the private office (that is, office-based) of the physician under a formalized agreement approved by the Substance Abuse and Mental Health Services Administration's (SAMHSA) Center for Substance Abuse Treatment and the New Jersey Department of Human Services' Division of Addiction Services.

85.     Notwithstanding that Dr. Brown and Affinity are inseparable as a doctor and his/her practice, Plaintiffs are being discriminated against and denied the issuance of a zoning permit for 200 West Somerdale Road, Voorhees, New Jersey.

86.     That Plaintiffs are being discriminated against is evidenced by the disparate treatment they have received and experienced as against that experienced by RCA in 2017, as described in detail in Paragraphs 49 through 55, inclusive, *supra*.

### AFFINITY'S EFFORTS TO SECURE A PERMIT IN ITS NAME AS REQUESTED BY THE NEW JERSEY DEPARTMENT OF HEALTH.

87.     Affinity has an application pending before the New Jersey Department of Human Services to operate an outpatient opioid treatment program located at 200 West Somerdale Road, Voorhees, New Jersey.   An application is pending with the United States Drug Enforcement Agency seeking federal approval in connection with the dispensing of Methadone as part of the services provided to patients.

88.     The State and Federal licensing applications cannot be approved without proof that Affinity has secured local approvals.

89.     In connection with and as part of the application review process, as afore-described in Paragraph 26, *supra*, Affinity received a copy of the Department of Health's Certificate of Need and Licensing – Behavior Health Licensure Application Evaluation Findings, entitled *Licensure Application Evaluation Findings To Be Licensed Under N.J.A.C. 10:161B*, dated September 9,

2019, which included, inter alia, a requirement that the 2018 Zoning Permit be amended to include the language: " Opioid Treatment Program," as more fully described in Paragraph 30, *supra*.

90.     To satisfy the NJDOH licensing requirement set forth at Paragraphs 30 and 89, *supra*, Affinity contacted Defendant Jaclyn Bradley, who, after being advised of the NJDOH requirement, determined that an amendment of the existing 2018 Zoning Permit was not permissible and that a new Zoning Permit Application would be required.

91.     Affinity submitted the required Zoning Permit Application on November 12, 2019, as described in Paragraph 31, *supra*.

92.     In the accompanying transmittal correspondence addressed to Defendant Bradley, the Defendant Township's Zoning Officer was advised, *inter alia*, that:

> On March 20, 2018, a Zoning Permit Application was submitted to your office, in which the proposed use was identified as a medical office. Thereafter, March 28, 2018, your office issued a Zoning Permit, No.: Z2018-0211, that correctly identified the use as a professional office "providing behavior health services on an outpatient basis." . . .
>
> Dr. Brown and Affinity's proposed operation is also subject to licensing by the New Jersey Department of Health's Certificate of Need and Licensing Unit. Licensing Standard 11.1(a)1 requires, that prior to the issuance of the State license, a Certificate of Occupancy shall be submitted to the Unit, which Certificate must state "Opioid Treatment Program" on the Certificate. To comply with the New Jersey Department of Health's requirement, as relates to the Zoning Certificate of Occupancy, the previously issued Zoning Permit must be amended to reflect the State-required language.
>
> As you will recall, in our recent teleconference, you advised that a simple amendment of the existing Certificate would not be possible and that a new zoning permit application would be required. In compliance with that direction, enclosed please find a completed Voorhees Township Zoning Application, executed by Timothy A. Stevens, vice president of Mid America.

93.     *Section*  156.037(B)(1),  <u>Zoning Officer; Zoning Permits; Certificates of Conformance</u>, of the Defendant Township's Code of Ordinances, authorizes, *inter alia*, the Zoning Officer to issue Zoning Permits. As explained in the Ordinance, "permits shall hereinafter be

secured from the Zoning Officer prior to construction, erection or alteration of any structure or part of a structure or use of a structure or land. All requests for zoning permits shall be made, in writing, by the owner or his authorized agent..." A review of *Section* 156.037 fails to disclose any applicable time of decision limitations, unlike the situation that would apply to a request for the issuance of a Certificate of Conformance.

94.     *Section* 156.037 of the Defendant Township's Code of Ordinances also provides for the issuance of Certificates of Conformance, which are intended to "...show that [a] ... building, structure or premises or part thereof is in conformity with the provisions of this chapter and all ordinances of the township, site plan and subdivision approvals and determinations of the Zoning Board of Adjustment which pertain to such building, structure or premises or part thereof." *Section* 156.037(C)(1).

95.     Unlike the process utilized in connection with a review of Zoning Permits, *Section* 156.037(C)(10) provides that an application seeking the issuance of a Certificate of Conformance, "shall be received by the Zoning Officer and shall be granted or denied by the Zoning Officer within ten business days after receipt of such written applications." Yet, even this time of decision component can be waived by the Zoning Officer, as *Section* 156.037(C)(10) further provides: "Notwithstanding the foregoing, the Zoning Officer may waive the requirements of this § 156.037(C)(10) if, in the exercise of his reasonable discretion, the interests of the township would be better served by such deviation from the specific requirements hereof."

96.     Still further in connection with the responsibilities of Defendant Zoning Officer, *Section* 156.037(C)(11) of the Defendant Township's Code of Ordinances establishes that "[t]he Zoning Officer shall be responsible for carrying out all necessary liaison with other municipal

24

officials whose inspection and approval are required for the issuance of a certificate of conformance pursuant to this § 156.037(C).

97.     The procedure employed by the Township of Voorhees in connection with Zoning Permit applications includes an inspection by the Voorhees Fire Department.  The Zoning Permit application identified in Paragraphs 31 and 96, *supra*, was accompanied by the requisite Township Fire District Fire Safety Registration Form/C.O. Application.

98.     Pursuant to *Section* 156.037(C)(11) of the Defendant Township's Code of Ordinances, the responsibility to coordinate the inspection by the Fire Department Inspector was at all times that of Jaclyn Bradley, in her official capacity as Zoning Officer.

99.     As is relevant to the instant action, the initial fire inspection occurred on Thursday, November 21, 2019.   The facility at 200 West Somerdale Road failed the inspection, as two (2) of the Fire Exit lights were inoperable; burned out bulbs.  The repairs were completed on Friday, November 22, 2019.

100.    Prior to the inspection identified in Paragraph 99, *supra*, a series of email communications were exchanged between Jaclyn Bradley and Affinity's staff:

> A. On November 19, 2019, at 9:11 A.M., Angela Clark, then
>
> Affinity's Corporate Compliance Officer, sent an email
>
> communication to Jaclyn Bradley, in which she (Clark) wrote:
>
>> Good Morning Jaclyn,
>> I need to set up for the fire inspector to come inspect our building. I am available every day this week to meet them out there. Let me know what works best for you guys.
>> Hope you have a good day.
>> Thanks,
>
> B. On November 19, 2019, at 12:35 P.M., Jaclyn Bradley, responded to
>
> Ms. Clark in an email communication that she (Bradley) copied to

another Township employee identified as Rebecca Keane, and in which

she (Bradley) wrote:

> Rebecca, could you please ask Colin if he is able to do a commercial
> (sic) tenant inspection this week and, if so, which day(s) he could do it?
>
> Also, if possible, could you let Ms. Clark (cc'd on this email) know
> when he could do it. He usually does them between 9 & 11 on the
> weekdays that he is able to do them. I don't want my lack of access to
> email to cause a delay in the scheduling, so I'm hoping you could
> arrange it with Colin.
>
> Thank you,
> Jackie

101.    At no time during the exchange of email communications described in Paragraph

100, *supra*, did Ms. Bradley request Ms. Keane alert "Colin" to the existence of the "10-day time

of decision component" of *Section* 156.037(C)(10) or that the procedural requirements related to

the issuance of Certificates of Conformance applied to Affinity's application.  More importantly,

at no time did Ms. Bradley alert Affinity that the there was a time of decision component to the

application.

102.    The email communication exchanges described in Paragraph 100, *supra*,

were followed by additional email exchanges beginning on Wednesday, November 20,

2019, as evidenced by the following:

> A. On Wednesday, November 20, 2019, at 11:04 AM, Angela Clark
>
> transmitted an email communication to Rebecca Keane, in which she
>
> (Clark) wrote:
>
> Good Morning Rebecca,
> Just wanted to follow up with you to see if it is possible to get the
> inspection scheduled this week?
> Hope you have a good day.
> Thanks,

B. On Wednesday, November 20, 2019, at 3:21 PM, Jaclyn Bradley wrote

the following email communication to Angela Clark:

Good afternoon, Angela. The inspector said that he is able to
swing by tomorrow morning between 9 & 11, if that works for
you. Please confirm and I will ensure that the inspection is added
to his calendar.

C. On Saturday, November 23, 2019, at 7:52 A.M., Angela Clark

authored a further email communication to Jaclyn Bradley, in

which she (Clark) reported:

I was able to get the exit signs fixed by the electricians yesterday. Do you
think it would be possible for Colin to come check them on Monday
morning?
Hope you had a good week.

D. On Monday, November 25, 2019, Jaclyn Bradley transmitted an email

communication to Angela Clark at 10:15 A.M., and in what has the

appearance of a clear effort to mislead and deceive, wrote:

Good morning, Angela. Unfortunately, I did not have a chance to speak
with Colin about the reinspection before he left for today's inspections
this morning. I have reached out to him, but have not heard back yet. (That
is not unusual as he is either driving or performing inspections once he
leaves the office.) When I hear from him, I will reach back out to you with
a time that he proposes. We were told not to schedule any more
inspections for tomorrow, but Wednesday may be possible, if he isn't able
to squeeze it in today.
I will be back in touch as soon as I hear from him.
Very best,
Jaclyn Bradley, AICP

103.    Notwithstanding that 13 days had now elapsed since the filing of Affinity's Zoning

Permit application, as described in Paragraphs 31 and 91, *supra*, the exchange of email

communications described in Paragraphs 100, 101, and 102, *supra*, establishes that at no time did

at no point within the above email communication did Bradley, in her official capacity, ever notify

Affinity or its agents that the afore-described Zoning Permit Application had been denied, by operation of the Ordinance, such that Jaclyn Bradley, in her official capacity, created, maintained, and reinforced a material false impression that the aforesaid Zoning Permit Application remained under review.

104.    During the time period described in Paragraphs 100, 101, and 102, *supra*, and while the November 12, 2019 Zoning Permit Application was pending, Jaclyn Bradley notified Affinity that the Township was imposing an additional requirement in connection with its review of aforesaid Zoning Permit Application that had not been required in connection with the issuance of the original 2018 Zoning Permit or RCA's 2017 application; the need to produce a Certificate of Need issued by the State of New Jersey.

105.    On Monday, November 18, 2019, Jaclyn Bradley transmitted an email communication to Ron Martin, Affinity's Managing Member, in which Ms. Bradly wrote, *inter alia*: "Are you able to provide a Certificate of Need from Department of Health?  I have been advised by our solicitor that we are required to have a copy of that certificate to issue the zoning approval.

106.    On receipt of the email communication identified in Paragraph 105, *supra*, Affinity contacted Jean DeVitto, Chief, NJDOH Certificate of Need & Licensing – Mental Health and Addiction Services, seeking guidance as to the proper response to the additional Township requirement.

107.    On Tuesday, November 19, 2019, at 3:16 P.M., Ms. DeVitto advised Affinity that "...opioid treatment program's (*sic*) are not covered under the regulations for the certificate of need.  These programs are covered under *N.J.A.C.* 10:161B."

108.    On Tuesday, November 19, 2019, subsequent to the event described in Paragraph 107, *supra*, Affinity forwarded Ms. DeVitto's response to the Certificate of Need issue to Jaclyn Bradley.

109.    On Thursday, November 21, 2019, at 4:23 P.M, ten days after the filing of the afore-described November 12, 2019 Zoning Permit Application, and while Jaclyn Bradley was engaged in an ongoing exchange of email communications with Angela Clark, as described in Paragraphs 100, 101, and 102, *supra*, Ms. Bradley sent the following email communication to Mr. Martin:

> Good afternoon. I am still awaiting our solicitor's response regarding the email below, however, the inspector told me that the property failed his inspection today because a number of emergency exit signs and emergency lights did not function.
> The denial is attached to this email. Please let us know when the repairs have been made and the units are ready for reinspection.

110.    On Friday, November 22, 2019, at 10:53 A.M., having advised Affinity a day earlier that its Zoning Permit Application had been denied, Jaclyn Bradley authored another email communication to Ronald Martin, Affinity's Managing Member, in which she wrote:

> Is it possible to obtain a more detailed description of the use? The application only stated "Medical Office/Opioid Treatment Center." We need a bit more information about how the center will function in order to research the statutes and ensure that we process the resubmission application appropriately. My hope is that by clearing all of the uncertainty in advance and getting a jump on the research, we can process the resubmission quickly. I have never had an application for this type of use before, so I am doing my research while also relying on our solicitor's experience and expertise, so it will take a little longer to do the footwork than it would take me to do a standard family medical practice permit. I apologize for any inconvenience.

111.    The request set forth at Paragraph 110, *supra*, was made to Affinity, notwithstanding a copy of Affinity's Scope of Services had been provided to the Zoning Office and the Township Administration on two prior occasions: once in March 2018, and once on

November 12, 2019. Ms. Bradley was advised the Township Administrator possessed a copy of the Scope of Services at 11:23 A.M., on November 22, 2019.

112.    At 11:35 A.M., on November 22, 2019, Jaclyn Bradley transmitted another email communication to Ronald Martin, in which, *inter alia*, Bradley, in apparent disregard of the notification previously provided, wrote:

> We will also need a description of the business operations to be submitted with the resubmission. I think this statement may have been misunderstood in my previous requests for the description. We are looking for the standard Zoning-related operation items including hours of operation, number of employees, number of doctors and patients on-site during peak time(s) (required to verify that there is sufficient parking), is the business an outpatient service or something else – things of that nature. Please include a description of the business operations with the application resubmission.

113.    On December 10, 2019, with the denial of the November 12, 2019 application and as a result of Jaclyn Bradley's notification that a new application would be required, Affinity delivered another application seeking issuance of a revised Zoning Permit to Wendy Flite, Secretary to the Voorhees Township Planning Board.

114.    On December 10, 2019, at 3:41 P.M., Christopher Norman, Esq., in his capacity as the Zoning Board Solicitor, notwithstanding the prior submission of copies of Affinity's Scope of Services to the Township on two occasions, wrote, *inter alia*, in an email communication to Affinity's legal counsel:

> As we discussed about a week or two ago, because an "Opioid Treatment Center" is a new type of use (that I had not come across in 29 years of representing municipal land use boards), I recommended that your client submit or amend its previous the Zoning Permit Application to provide a narrative or description of the proposed use for the Township Zoning Officer to determine whether it is a medical office use, or the functional equivalent thereof (e.g. a "methadone treatment center") or is it something else.
>
> . . . .

30

According to N.J.A.C. 10:161B-11.1(a)(1), your client is required to submit the following to Voorhees Township: "Provide written documentation that the applicant for licensure of the opioid treatment program has notified the governing authority of the municipality of the full scope of services, including opioid treatment, to be provided at the facility."

In my legal opinion, your client's submission for a zoning permit does not meet this regulatory requirement in seeking a zoning permit. The November 4, 2019 application submission for a Zoning Permit only describes the proposed use as a "medical office/out-patient opioid treatment center". Moreover, your letter of November 8, 2019 letter fails to provide further clarity. It merely states, "Dr. Brown and Affinity have entered into a lease to operate medical offices, including an outpatient opioid treatment center, in the Voorhees Commons, located at 200 West Somerdale Road, in Voorhees." It further states, "the use as a professional office 'providing behavior health services on an outpatient basis.'"

There is (sic) no details concerning the operations of the opioid treatment center, including the types of services to be provided, and details concerning potential site plan impacts of the use (i.e. how many patients will be seen per hour, per day, per week; how will patients be transported to the facility; proposed hours of operation, parking requirements, number of employees, etc.). The Zoning Officer cannot determine whether the proposed use will be similar to a medical office in terms of land use impacts.

115.   On Wednesday, December 11, 2019, at 11:59 A.M., less than one day after the filing of the December 10, 2019 Zoning Permit Application described in Paragraph 113, *supra*, Jaclyn Bradley denied Affinity's second application. In her email communication notifying Affinity of her decision, Jaclyn Bradley wrote:

Thank you for the information. We have also been asking for the standard operational nature of the business, as in hours of operation, how many doctors/counselors/professionals are on site, how many patients/clients are on site at peak hours, things of that nature. These items are specific to each tenant, however, only generic information regarding regulations have been provided thus far. We verify that the site itself contains sufficient parking for the proposed use, and traffic patterns and circulation will not create a hazardous situation.

We have been seeking the information for how this particular site would operate, but have yet to be able to obtain the standard information that we often request when a potential change of use if

proposed. While seeking more information regarding operational norms for this type of center, I was informed that they typically do not operate like a standard medical practice with scheduled appointments. The scheduling of appointments typically ensures that there is not an over-demand for parking on the site during peak hours. Uses that do not have scheduled appointments sometimes function more similarly to a retail use, where patrons visit the property at their leisure and peak parking demands are accommodated by larger parking lots.

Since the proposed change of use appears to be significantly different than the previously permitted uses on this site, I believe that approval for the Change of Use must be obtained from the Planning Board, per Section 156.018 of the Voorhees Township Unified Land Development Ordinance. The board would need to make a determination regarding whether the existing site conditions can support the proposed new use. The Township's Solicitor has been in contact with your attorney regarding the need for the clarification and the ability to file various types of applications to the boards. I defer to their expertise.

116.    In addition to the exchange of email communications described in Paragraphs 114 and 115, *supra*, a separate series of email communications were occurring between Affinity and Voorhees Township officials, as set forth below:

A.  At 8:39 A.M., on December 11, 2019, Ronald Martin, Affinity's Managing member, transmitted an email communication addressed to Christopher Norman, Esq., Zoning Board Solicitor, wrote, *inter alia*:

Please find attached the requested supportive information that you have requested. If you need more please let me know I will take several days to compile.  We provided the township with a complete "scope of services" several times. I will send it again.

B.  Christopher Norman, Esq., responded to the above email communication at 9:30 A.M., when he wrote to Mr. Martin:

Could you kindly forward me the "scope of services" information that you indicate in your email was submitted to Voorhees Township.  It was not included in the attachments you forwarded me.

C.   At 12:00 P.M., on December 11, 2019, Affinity, through its counsel, transmitted an email communication to Christopher Norman, Esq., by which it provided a third copy of its Scope of Services, as represented by the CARF materials.

117.   The Township of Voorhees' action in denying Affinity's December 10, 2019 Zoning Permit Application on the basis that Affinity had not provided requested information as to the nature and scope of its operations was without basis and evidenced an intent to deny Affinity an opportunity to answer the Township's inquiries and constituted discriminatory conduct.

118.   With the denial of its December 10, 2019 Zoning Permit Application, Affinity was compelled to apply to the Voorhees Township Planning Board for a review of the proposed change of use, as described in Paragraph 35, *supra.*

119.   The Change of Use Application was filed with Wendy flite, the Township Planning Board Secretary on February 6, 2020.   As required by *Section* 156.010 of the Township of Voorhees Municipal Land Use Ordinance, Affinity published notice of its application in the *Courier Post* and mailed notices to the owners of all properties within 200 feet of 200 West Somerdale Road, Voorhees, New Jersey.

120.   As part of its Change of Use Review Application, Affinity, consistent with the provisions of *Section* 156.018 of the Township's Land Use Ordinance, sought waiver of site plan review.   As relevant to the instant action, a full site plan review can be waived by the Planning Board, in connection with the change of use review, if the proposed use does not "... the construction or alteration or change of occupancy or use does not affect existing circulation, drainage, relationship of buildings to each other, landscaping, buffering, lighting and other considerations of site plan review. ..." *Section* 156.018(D).

33

121.    The application was scheduled for a public hearing before the Planning Board on Wednesday, March 11, 2020.

122.    As discussed in Paragraphs 40 and 41, *supra*, Affinity's Change of Use Review Application was submitted to the Township Planning Board's Engineer, Rakesh Darji, of Environmental Resolutions, Inc., for review.

123.    As part of his review, Rakesh Darji authored a report, dated March 6, 2020, as afore-described in Paragraph 41, *supra*. The Report submitted by Mr. Darji failed to discuss the standards applicable to a change of use review. As part of his report, Mr. Darji acted to convert the application from a change of use review to an application seeking a use variance, pursuant to N.J.S.A. 40:55D-70(d), by advising the Planning Board that Affinity "…should provide testimony indicating how the 'medical practice providing outpatient behavioral health opioid treatment services' is consistent with the permitted uses" in the Office-1 Zoning District.

124.    The position taken by Mr. Darji in connection with Affinity's Change of Use Review Application was at direct variance with the Zoning Official's decision in 2018 with respect to the initial Zoning Permit Application submitted on behalf of Dr. Brown.

125.    The position taken by Mr. Darji was also at variance with the position of Jaclyn Bradley, who, on March 2, 2020, in an email communication to Affinity, confirmed that the 2018 Zoning Permit issued to Dr. Brown "remains in place for the use approved at that time."

126.    As part of his report, Rakesh Darji ignored the site plan waiver components of *Section* 156.018, notwithstanding that the Township, through Jaclyn Bradley, had notified Affinity, through an email communication of December 11, 2019, as set forth in Paragraph 115, *supra*, wrote:

> We verify that the site itself contains sufficient parking for the proposed use, and traffic patterns and circulation will not create a hazardous situation.

127.    On information and belief, the Darji report identified and discussed in Paragraphs 123, 124, 125, and 126, *supra*, which report was provided to the Applicant on March 6, 2020, was the second report prepared by Mr. Darji with respect to the Affinity application.

128.    On information and belief, Rakesh Darji prepared a draft report prior to March 6, 2020 and provided that draft report to the Planning Board's Solicitor, Stuart Platt, Esq.

129.    On information and belief, Stuart Platt, Esq., in his capacity as Planning Board Solicitor, reviewed the draft report prepared by Mr. Darji and discussed that draft report during a 48-minute teleconference with Environmental Resolution, Inc.

130.    On information and belief, subsequent to the event described in Paragraph 130, *supra*, Rakesh Darji prepared and released the Report identified in Paragraph 123, *supra*.

131.    Notwithstanding Plaintiffs' request for production by Defendants of a copy of the draft report identified in Paragraphs 128 and 129, *supra*, no such report has been provided.

**THE TOWNSHIP OF VOORHEES, ITS ZONING OFFICER AND ZONING BOARD SOLICITOR HAVE VIOLATED AFFINITY AND DR. BROWN'S RIGHTS TO EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT THROUGH THE SELECTIVE ENFORCEMENT OF THE CHANGE OF USE REVIEW PROVISION SET FORTH AT SECTION 156.018 OF THE TOWNSHIP OF VOORHEES MUNICIPAL LAND USE ORDINANCE.**

132.    A selective enforcement claim is based on the well-established principle that discriminatory enforcement of a facially neutral law violates the Constitution's Equal Protection Clause.

133.    Discriminatory enforcement of a facially neutral law violates the Equal Protection Clause.

134.    To establish unconstitutional enforcement of an ordinance, a party must show both a discriminatory effect and a motivating discriminatory purpose. The party must prove it was treated differently from similarly situated individuals or entities and that the selective treatment was based on an unjustifiable standard, such as race, religion, or some other arbitrary standard.

135.    The Land Use Ordinance adopted by the Defendant Township of Voorhees provides a series of zoning districts within the municipality and permitted uses within each zoning district.

136.    Among the aforesaid Zoning Districts described in Paragraphs 17, 18, and 19, *supra*, is the Office 1 Zoning District, wherein permitted uses are identified as including the offices of a recognized profession, including but not limited to medicine.

137.    As described in Paragraphs 20, 21, and 22, *supra*, on March 28, 2018, the Zoning Officer for the Township of Voorhees issued a Zoning Permit to Dr. Kenneth Brown to operate a behavioral health program, consistent with the description of an opioid treatment program as defined by NJDOH, the CDC, CMS, NIH, and SAMHSA.

138.    In conjunction with the Zoning Permit's issuance, as identified in Paragraph 137, *supra*, no review by the Voorhees Township Planning Board was required by the Zoning Officer, notwithstanding the proposed use constituted a new use as defined by *Section* 156.018.

139.    As described in Paragraph 49, 50, and 51, *supra*, on January 10, 2017, the Zoning Officer for the Township of Voorhees issued a Zoning Permit, Permit No.: Z2017-0024, to RCA, which Permit allowed RCA to open an Opioid Treatment Program at a location within the O-1 Zoning District.

140. As described in Paragraphs 49, 50, and 51, *supra*, no review by the Voorhees Planning Board was required by the Zoning Officer or Stuart Platt, Esq., in his capacity as Board Solicitor, notwithstanding the proposed use constituted a new use as defined by *Section* 156.018.

141. As pertinent to the instant action, New Jersey's Open Public Records Act (OPRA) is designed to advance the policy of maximizing public knowledge about public affairs by broadly defining "government records," and publicly declaring that they shall be accessible. *N.J.S.A.* 47:1A-11. The purpose of the statue is to make government records readily accessible for inspection, copying, or examination.

142. A "government record" as defined by *N.J.S.A.* 47:1A-1.1, means any paper, written or printed book, document, drawing, map, plan, photograph ... that has been made, maintained, or kept on file in the course of official business by any officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof, or that has been received in the course of his or its official business by any such office, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof.

143. On July 23, 2020, an OPRA request for production of copies of all Change of Use Review applications with respect to any properties located within a non-residential zone filed with the Township of Voorhees Planning Board, pursuant to *Section* 156.018, for the preceding five-year period was served on the Township of Voorhees.

144. On or about August 18, 2020 the Township of Voorhees responded to the OPRA request described in paragraph 143, *supra*, through the production of a single Change of Use Review Application filed pursuant to *Section* 156.018.

145.     On July 23, 2020, as part of the OPRA request identified in Paragraph 143, *supra*, Plaintiffs also sought production of all Zoning Permits issued with respect to non-residential properties was submitted to the Township of Voorhees in an attempt to gather information as to the number of such applications that would possibly trigger a review pursuant to *Section* 156.018 of the Township of Voorhees Municipal Land Use Ordinance.

146.     On August 18, 2020, Wendy Flite, Secretary of the Township of Voorhees Planning Board, after the granting of extensions pursuant to OPRA, responded to the pending OPRA request through an email that read:

> This message is in response to your request for copies of Zoning Permits for non-residential properties. These permits cannot be found on our server conducting a simple search. The Zoning office does not maintain a list of permits. This part of your request is over broad and I cannot retrieve this information. Therefore, I am unable to complete this part of your request. The Change of Use application documents were sent to you yesterday.

147.     The Township of Voorhees' response, through the email communication described in Paragraph 146, *supra*, to the OPRA request identified in Paragraph 143, *supra*, constituted a violation of the provisions of *N.J.S.A.*47:1A-1.1, *et seq.*, in that, the Township of Voorhees, through its administration, officers, employees, and agents, failed to provide the requested information.

148.     On information and belief, and as established by the review of the Zoning Permits identified in Paragraphs 21 and 49, *supra*, the Township of Voorhees Zoning Department maintains and issues Zoning Permits in numerical order for each calendar year.

149.     Further on information and belief the afore-described Zoning Permits are issued under the following format: Z-Calendar Year-Sequential Permit Number.

150.     The failure of the Township of Voorhees to properly respond to the OPRA request described in Paragraph 143, *supra*, was designed, intended and executed to deny Plaintiffs the

38

ability to explore and establish the extent to which the Township of Voorhees, its administration, officials, employees, and agents engaged in a pattern and course of conduct to illegally discriminate against Affinity, Dr. Brown, and their patients in violation of the ADA and Section 504 of the Rehabilitation Act of 1973.

**THE PROCEEDINGS BEFORE THE TOWNSHIP OF VOORHEES PLANNING BOARD WERE CONDUCTED IN SUCH A WAY AS TO DENY AFFINITY ITS BASIC DUE PROCESS AND EQUAL PROTECTION RIGHTS TO A FAIR AND IMPARTIAL REVIEW OF ITS CHANGE OF USE REVIEW APPLICATION.**

151.    Pursuant to the provisions of Section 156.018 of the Land Use Ordinance of the Township of Voorhees, a change of use review application, submitted pursuant to *Section* 156.018 of the Township of Voorhees Land Use Ordinance, must be reviewed during a public hearing.

152.    As is relevant to the instant action, Affinity appeared before the Defendant Board on four (4) separate dates in connection with its application: July 22, 2020; August 26, 2020; September 23, 2020; and October 14, 2020.  On each occasion, the Defendant Board conducted the hearing through a video conferencing platform.

**THE MEMBERS OF THE VOORHEES TOWNSHIP PLANNING BOARD FAILED TO DISCHARGE THEIR INDIVIDUAL AND COLLECTIVE RESPONSIBILITY TO EXECUTE THE RESPONSIBILITIES OF THEIR POSITIONS AS PUBLIC OFFICIALS.**

153.    From the outset of the hearings on July 22, 2020, the members of the Voorhees Township Planning Board made often and repeated comments that evidenced an uninformed, biased predisposition against Affinity, based solely on the treatment options it provides, in violation of the ADA's prohibition against discrimination.

154.    The Planning Board Members provided comments and testimony during the several video conferencing hearings that revolved around uncorroborated facts regarding: rehabilitation facilities; Methadone use in general; speculative fears about the anticipated protected class of

individuals who would receive treatment; and rising crime rates: all in violation of the ADA and Section 504.

155.    The commentary and testimony afore-described in Paragraph 154, *supra*, included, but was not limited to the following Board Member and Board Solicitor comments and testimony:

A. Mario DiNatale, the Director of the Voorhees Township Economic Development Department, inquired about patients receiving methadone treatment via intravenous needles;

B. Anthony Ricini raised repeated questions concerning security predicated upon testimony "based on the type of drugs dispensed and clients being served."

C. Jason Ravitz, Deputy Mayor of Voorhees, testified as to his belief that drug dealers will be drawn to the area and prey on the patients receiving treatment.

D. Stuart Platt, Esq., Board Solicitor, repeatedly throughout the course of the hearings, questioned security issues based solely on the facility's location a quarter mile from an elementary school, while failing to disclose the approval, without a required review, of an Opioid Treatment Provider across the street from a day care center.

E. Anthony Ricini raised additional concerns with respect to the elementary school and, in a statement supportive of not-in-my-backyard syndrome, stated to Affinity: "Why don't you go to another municipality where they won't ask so many questions."

F. Anthony Ricini further testified, during the hearings, that the chances of addicted persons causing trouble with kids and the community is more likely than with non-addicted persons.

G. Anthony Ricini still further raised as a security concern that pedophiles, upon release from jail, would seek treatment at a facility located close to a school.

H. Anthony Ricini still further opined: "I'd rather be in an area where there are no facilities than in an area with one."

156.    As evidenced by the comments alleged in Paragraph 155, *supra*, the Board Members believed, without any factual basis, that treatment programs such as Affinity's raise crime rates and pose a danger to the community more so than other types of medical offices.

157.    Stuart Platt, Esq., Board Solicitor, reinforced the Board Member's beliefs when, during the hearings, he posed a question to Affinity asking its Managing Member whether his testimony addressing the proximity of the facility to an elementary school had changed now that he (the Managing member) had heard the issues about being close to a school.

158.    Prohibiting the opening of methadone treatment clinics based on "speculative" fear is both a violation of the ADA, 42 *U.S.C.* 12101(b)(1), and its expressed goal of eliminating discrimination against people with disabilities and Section 504 of the Rehabilitation Act protection from deprivations based on prejudice, stereotypes, or unfounded fear.

159.    The testimony provided by the members of the Voorhees Township Planning Board was based upon speculation, presumed risk, and hypothetical in nature, such that, the testimony described in Paragraph 155, *supra*, did not constitute evidence that any patient, in fact, posed a significant risk. Rather, the testimony offered by the members of the Voorhees Township Planning

Board disclosed their individual and collective opinions as to the disabled individuals who were anticipated patients of Affinity.

160.    During the several hearings before the Voorhees Township Planning Board, Stuart Platt, Esq., in his capacity as Board Solicitor, failed to advise the Board as to the violative nature and tenor of the Board member comments and questions and permitted improper questioning of Affinity.

**THE VOORHEES TOWNSHIP PLANNING BOARD'S MEMBERS' CONDUCT DURING THE HEARINGS WAS UNPROFESSIONAL AND CONSTITUTED A VIOLATION OF THEIR INDIVIDUAL AND COLLECTIVE RESPONSIBILITES UNDER THE NEW JERSEY LAND USE LAW, *N.J.S.A.* 40:55D-1, *ET SEQ.***

161.    It is fundamental to the New Jersey Municipal Land Use Law, *N.J.S.A.* 40:55D-1, *et seq.*, that applicants, as interested parties, have a fundamental right to be heard during hearings before land use boards.

162.    *N.J.S.A.* 40:55D-4, defines "interested party" as "any person, whether residing within or without the municipality, whose rights to use, acquire, or enjoy property is or may be affected by any action taken under this Act, or whose rights to use, acquire or enjoy property under this Act, or under any other law of this State or of the United States have been denied, violated or infringed by an action of a failure to act under this Act."

163.    While the Township of Voorhees Planning Board is not a court, in the conduct of hearings before it, as with Affinity's application, when deciding matters properly before it the Board must hear testimony, take exhibits, make findings of fact and draw legal conclusions from the facts as produced by the evidence presented at the hearing in much the same way courts do.

164.    Notwithstanding the responsibility to hear the testimony offered, examine the evidence, and make findings of fact, members of the Voorhees Township Planning Board absented

themselves during the afore-described video conferencing proceedings or were otherwise distracted.

165.    The conduct described in Paragraph 164, *supra*, included, but was not limited to the following:

A.  Board Member Mark Leinman was eating and left the video conference meeting room or extended periods of time.

B.  Board Member David Kleinman was operating a motor vehicle throughout the video conferenced hearing held on August 26, 2020. Upon exiting his vehicle engaged in a conversation with an as yet unidentified individual located off-camera.

C.  Board Member Jason Ravitz, Deputy Mayor, was observed on multiple occasions eating, along with his absence from the video conference meeting room on multiple occasions.

D.  Board Member Mario DiNatale was observed sleeping on multiple occasions.

E.  Board Member Troy Brocco was observed watching television.

166.    The absence or diverted attention of the several Planning Board Members, as described in Paragraphs 164 and 165, *supra*, denied Affinity a fair and impartial review of its application.

**DURING THE HEARINGS BEFORE THE VOORHEES TOWNSHIP PLANNING BOARD, STUART PLATT, ESQ., ACTING AS THE BOARD'S SOLICITOR, DOMINATED THE BOARD, ACTED AS A HEARING MASTER, AND DENIED AFFINITY A FAIR AND IMPARTIAL HEARING.**

167.    The proceedings before the Voorhees Township Planning Board were based upon Affinity's application seeking a change of use review, as provided for in *Section* 156.018 of the

Township of Voorhees Land Use Ordinance, as more fully described in Paragraphs 119 and 120, *supra*.

168.    As part of that review, the burden of proof was on Affinity to establish that its proposed use was identical or substantially similar to Dr. Brown's approved use.

169.    Further, in connection with the change of use review, Affinity was presented with the Board Engineer's report raising questions as to the medical nature of the use, as more fully described at Paragraphs 41 and 123, *supra*.

170.    During the hearings before the Board described in Paragraph 152, *supra*, Affinity offered the expert testimony of two (2) physicians, Dr. Dan Edwards, M.D., and Dr. J. Gregory Hobelmann, M.D., certified in the field of addiction medicine.

171.    The testimony of Dr. Edwards and Dr. Hobelmann was intended by Affinity to establish (1) that the nature of Affinity's practice was identical to that of Br. Brown and (2) that the treatment of those suffering from addiction is the practice of medicine.

172.    Notwithstanding the Applicant's burden pursuant to *Section* 156.018 or the nature of the use issue raised in the report of Rakesh Darji, Paragraphs 41 and 123, *supra*, Stuart Platt, Esq., in his capacity as Planning Board Solicitor, throughout the several hearings, interrupted the experts' testimony and objected to the relevance of the testimony of Dr. Edwards and Dr. Hobelmann claiming "we have land issues to deal with."

173.    The interruptions and objections made by Stuart Platt, Esq., prevented Affinity from offering relevant expert testimony to the Planning Board with respect to the change of use application under Board review.

174.    Stuart Platt, Esq.'s conduct described in Paragraph 172 and 173, *supra*, negatively impacted Affinity's presentation and prevented it from having a fair and impartial review of its

application as evidenced by the Board Solicitor's interruption and objection during the August 26, 2020 testimony of Dr. J. Gregory Hobelmann, M.D., Affinity's expert in the field of addiction medicine.

175.    During the testimony of Dr. Hobelmann, M.D., described in Paragraphs 170 and 171, *supra*, Stuart Platt, Esq., acting as the Board Solicitor, interposed objections and acting as the Board Chairperson, limited the scope of Dr. Hobelmann's testimony by, including, but not limited to, objecting to the relevancy of testimony, notwithstanding the testimony was proffered as addressing the medical nature of addiction-focused medical practices.

176.    Further during the testimony of Dr. Hobelmann, Stuart Platt, Esq., acting as the Board's Solicitor, interrupted and attempted to prevent Affinity's counsel from fully developing Dr. Hobelmann's testimony to confront or address in an anticipatory fashion, the discriminatory Board Member comments and testimony as set forth in Paragraphs 155 and 159, *supra*.

177.    Further evidence of the negative impact of Stuart Platt, Esq.'s conduct occurred during the September 23, 2020 testimony of Dr. Dan Edwards, when, as a result of Board Member DiNatale's inquiry to Dr. Edwards as to the success rate of treatment utilizing Methadone, Deputy Mayor Ravitz interrupted the proceedings stating: "our solicitor, Mr. Platt, just stated this is all irrelevant information."

**THE COMMENTS AND TESTIMONY OFFERED BY INDIVIDUALS DURING THE PUBLIC PORTION OF THE HEARINGS ON AFFINITY'S APPLICATION AND AS SUBMITTED TO THE TOWNSHIP OF VOORHEES PLANNING BOARD IN ADVANCE OF THE AFORESAID HEARINGS CONSTITUTED IMPROPER SPECULATIVE, BIASED, AND DISCRIMINATORY TESTIMONY AND COMMENT IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT OF 1973.**

178.    The New Jersey Municipal Land Use Law provides for public comment on every application considered by a local land use board, such as the Voorhees Township Planning Board.

179.   *Section* 156.018(B) of the Township of Voorhees Municipal Land Use Ordinance requires applicants seeking change of use review to provide notice of the public hearing, as defined at *Section* 156.019 of the aforesaid Municipal Land Use Ordinance.

180.   Affinity and Dr. Brown provided the notice required by *Section* 156.018 and *Section* 156.010, *supra*, on four (4) separate occasions.

181.   Both the ADA and Section 504 of the Rehabilitation Act of 1973 aim to protect disabled individuals from deprivations based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to such legitimate concerns as avoiding exposing others to significant health and safety risks.

182.   To be determinative factors, the significant health and safety risks described in Paragraph 181, *supra*, must be substantial, not speculative or remote.

183.   To be entitled to protection under the ADA or Section 504, Affinity is not required to establish that it or its patients pose no risk at all.

184.   During the public comment portion of the hearings before the Voorhees Township Planning Board, eight (8) members of the public were permitted to offer speculative, biased, and factually unsupported comments on the merits of Affinity's change of use review application.

185.   The testimony described in Paragraph 184, *supra*, included, but was not limited to the following testimony:

> A.  "My complaint is that, my home backs up the speed line. These people that are going to be getting off, walking by, going through a small little path through Robin Hill Apartments and onto this facility ... I object to this terribly because number one, it's near the school. Number two, I walk there constantly. There's children that live in Robin Hill Apartments that get on and get off of that bus. This facility is just put just in the completely wrong place ... Put it over in the Sturbridge Woods ... Put it over in the Beagle Club ... put it somewhere else besides in a neighborhood such as ours."

B. "We moved to Voorhees for the school district and because it was a clean, safe, you know, really desirable area to live. So, I'm opposed to the clinic. You know, we're also worried about our property value decreasing and new families might not want to move to this area of Voorhees."

C. "I've lived here 23 years, a block and a half away from the school. My children attend Osage Elementary School. Or as Mr. Martin calls it, Osage School. He has no clue. He's bullshitting you. Sorry. I apologize for my language, but it's obvious he's deceptive. You know, to add methadone-treated, dizzy drivers to these roads would be extremely dangerous. You know, children are crossing that methadone clinic."

D. "It's also been proven that methadone clinics attract heroin addicts and drug dealers who sell illegal drugs to them. So, in effect, Affinity is purposely drawing illegal drug deals to within a thousand feet of our school. It sounds as if Affinity Healthcare is knowingly more of criminal accomplice than anything ... We don't want an affinity of junkies drawn to our school. We don't want an affinity of drug dealers drawn to our school. We don't want an affinity of deception from Affinity Healthcare ... a medical office is simply not the same as a methadone clinic."

186.    During the public comment, one resident, who identified herself as holding a doctorate in pharmacology and being a certified oncology pharmacist, testified as follows:

> I worry about these individuals coming out of this facility, being dizzy or not a hundred percent clear with themselves, and it frightens me. I'm worried that we have woods behind our home that they could use to cut through our property to get to the back of this facility, which is only 250 feet away from our property, I don't worry for myself, but I worry for my grandchildren. I sympathize with these people, but I think this facility could be in a better place.

Still further, evidencing her knowledge of Methadone, the resident testified:

> There's also a lot of children who wait for the bus at that corner. So, you know, I worry about added traffic, people being titrated up on methadone and, you know, driving their cars.

187.    The resident identified in Paragraph 186, *supra*, because of her certification and educational status, created an impression that her testimony, while not being offered as expert testimony, carried with it the potential impact of being perceived as such by the Members of the Board; especially, as her testimony was phrased using a term of art: "titrate."

188.    In light of the perception created through the testimony of the witness identified in Paragraphs 186 and 187, *supra*, Affinity's counsel attempted to develop the record that the dosing levels and titration of methadone for use in the management of pain in an oncological setting differ from that present in treating patients suffering from Opioid Use Disorder.

189.    Affinity's counsel's effort to address the impact of Methadone used as MAT on drivers as raised by the witness identified in Paragraph 186, 187, and 188, *supra*, was denied by Stuart Platt, Esq., in his capacity as Board Solicitor.

190.    The result of the denial of Affinity's counsel's effort to address the substantial safety risk raised through the testimony of the witness identified in Paragraphs 186, 187, and 188, *supra*, was to leave unchallenged the assertion that individuals operating motor vehicles while undergoing MAT constitute a danger to the public.

191.    In addition to the public comments described in Paragraphs 184, 185, 186, and 187, *supra*, the Township of Voorhees Planning Board received email communications from interested parties, in advance of the hearings, as a result of the public notice provided as described in Paragraphs 119 and 180, *supra*.

192.    The Township of Voorhees, the Township of Voorhees Planning Board, and Wendy Flite, Planning Board Secretary, improperly denied Affinity access to the email communications described in Paragraph 191, *supra*, until after the July 11, 2020 hearing before the aforesaid Planning Board, in an attempt to frustrate and hinder Affinity's ability to address local concerns and respond to the issues raised in or through the afore-described email communications.

193.    As with the public testimony set forth at Paragraphs 184, 185, 186, and 187, *supra*, the email communications received by the aforesaid Planning Board exhibited prejudice against

disabled persons, dealt in stereotypes, or raised unfounded fears, as evidenced by the following email communications:

A. Dear Members of the Planning Committee Board,

I am writing you today to express my strong opposition to the Methadone Clinic proposal that you will be considering on your March 11th meeting. A residential neighborhood is not the place for a methadone clinic, and neither is a block away from an elementary school.

As someone who recently moved to Voorhees from South Philadelphia, I have witnessed first hand the results of living near a methadone clinic as my house was located a block away from one. Without the residents' input, the City thought it was a good idea to locate a methadone clinic in a residential area. The results were catastrophic; addicts ended up roaming the neighborhood, shooting drugs, hiding in people's garages or alleys and passing out. As a result, homeowners like myself sold their homes to escape the insanity so they could raise their families in a safe environment. In some situations, houses were not sold, and squatters invaded those homes and more drug houses were suddenly popping out all over the neighborhood. What was originally meant to be public assistance ended up causing the decline of a neighborhood, especially for long-time residents who had no financial ways to move out.

Additionally, we are already living in a county with some of the highest real estate taxes; taxes that should be going to our school system, our neighborhoods, our roads, and other services. Let's continue putting those tax dollars to work for the hard working people who are actually paying taxes. I appreciate your attention on this matter. Thank you.

B. I am contacting the Voorhees Planning board and Committee to let you know that I'm very concerned with this proposal. As a homeowner who has children I want my peace of mind and their safety. Please give us some support and nix this proposal completely. Thank You!

C. Dear Planning Board Secretary,
I am a 23 year resident of Voorhees, {Green Ridge} and I ask for your support against the proposed methadone clinic in a residential neighborhood -along the same walkway a block away from Osage Elementary School. As you may know, there are several similar local cases which resulted in the methadone clinics defeated. These methadone

clinics typically have armed guards and heroine (sic) addicts who report high, according to published local reports.

**<u>There is no doubt that allowing a methadone clinic at the proposed location would be a serious safety threat to our children and police officers, as well as a burden to our courts.</u>**
Please support a no vote against the proposal.
Thank You.

D. Sent from my iPhone while I am a Cherry Hill resident, I feel the need to weigh in because this type of decision affects all our neighborhoods. We are currently seeing an up tick in nuisance crimes. People are attempting to steal small things from cars and sheds. These types of crimes signal drugs. Now with this initiative we are inviting that segment of the population who commit these types of crimes on an even greater proportion. Send these people to PCP or to local ED's.

E. Good Afternoon,

Attention all planning board members: There is rumor of an upcoming Voorhees Planning Committee meeting on March 11th at 7pm regarding building a full-scale for-profit methadone clinic along the same <u>walkpath</u> 1 block from Osage Elementary School across from a daycare, in a residential neighborhood.

This section of Voorhees <u>has the largest population of minorities, thousands of apartments, lower incomes and currently has many treatment centers, group homes and recovery houses \ already in place. It seems these citizens are unfairly represented because they put all the high-risk and dangerous sites in this low-income residential area of Voorhees vs wealthier areas of Voorhees like Sturbridge for example.</u>

<u>Osage Elementary School children would walk past this proposed armed-guarded methadone clinic</u> that could serve hundreds of heroin addicts traveling there daily, and waiting in long-lines before daily opening.

<u>This methadone clinic simply doesn't belong in a residential area, 1 block along the same walk-path of an elementary school, with a children's daycare across the street. Are they insane?</u>
There are literally millions of better options, even in this township where buildings have been vacant for 10 years in non-residential neighborhoods.

To be clear, the Osage part of town has the largest percentage of minority and lower income citizens by far.

We have the data. To approve of a methadone center at this location is oppression.

Against the proposal. Enough is enough for this area of town.

Kind Regards,

F.  I don't want this proposed Methadone Clinic near Osage Elementary School in Voorhees, as it would only be a matter of time before a student finds a used syringe there. Students will have 3 methadone treatment centers within 1 block of each other and the school. "Methadone Mile" is a section of Boston's Massachusetts Avenue that is lined with methadone clinics and illicit drug use. People come to this strip to get high and get sober. The area is literally littered with evidence of drug use. Nearby schools like Orchard Gardens K-8 institution are just blocks from Boston's busiest addiction treatment programs. As a result, their property has become the dumping ground for used needles, putting children in danger. Orchard Gardens School Nurse Sue Burchill admits, "You can't even sit in the bleachers in our little field because they shoot up underneath them".  School officials worry this won't be enough. During fall and winter, leaves and snow easily hide needles, increasing the risk of student contact.

Please share this with the Voorhees Township planning board.

G.  Dear Voorhees Township Planning Board, (7/22/2020 Meeting Affinity Healthcare LLC)
•   This letter may be useful to understand the <u>unsafe and dangerous impact</u> of placing a Methadone Clinic 1 block {two-tenths of a mile} along the same walk-path of:

1:   Osage Elementary School 112 Somerdale Rd (Somerdale Rd near Burnt Mill Rd}

2:   The Learning Experience 401 S Burnt Mill Rd (Burnt Mill Rd near Somerdale Rd)

3:   One Step At A Time Daycare Academy 219 S Burnt Mill Rd #1Burnt Mill Rd near Somerdale Rd.

•   17 miles away, the board ruled that a drug treatment facility can't use buildings zoned for regular medical offices

•   Another towns officials denied a methadone clinic a license to operate. Residents living near the proposed clinic feared it would bring drug dealing to the neighborhood and argued the clinic should be placed in a neighborhood that doesn't have as many drug facilities.

- At Lewis Elkin Elementary, close to "needle park" children routinely watch drug users inject themselves — and they also see paramedics race to reverse overdoses. A principle walking her third grade student past the park commented "it was the scariest walk I had" not just because they stepped over needles and past people injecting drugs, but also because many worry about "becoming a part of what they see".

Numerous people in addiction have told reporters and researchers that they wish children didn't have to see them, either.

- Where there is too much treatment, predators descend on methadone patients, trying to sell them other drugs. The police all say, "We wish there was something we could do about it, but this is what happens when you have all the clinics here."

- "Methadone Mile" arrests in the area have increased 58 percent and workers collected 26,000 used syringes and used overdose drug naloxone 77 times according to city data. Most business were forced to hire security guards.

Residents still find discarded needles in their yards and people injecting drugs on their front steps or passed out behind their homes.

- New dealers emerge almost as quickly as the police can make arrests and that many of those convicted receive sentences that do not involve jail time.

194. The public comments provided through the email communications described in Paragraph 192, *supra*, and as set forth in Paragraph 193, *supra*, improperly raised speculative fears and concerns ranging from fear to safety to crime and property values.

195. At no time during the several hearings before the Township of Voorhees Planning Board were the members of the aforesaid Board apprised that the nature of the aforesaid email communications or the public testimony presented to the aforesaid Board were speculative, without factual support and violative of the ADA and Section 504 of the Rehabilitation Act of 1973.

**THE VOORHEES TOWNSHIP PLANNING BOARD AND STUART
PLATT, ESQ., BOARD SOLICITOR, ENGAGED IN DISCRIMINATORY
CONDUCT BY FAILING TO MAKE REASONABLE
ACCOMMODATIONS IN VIOLATION OF TITLE II OF THE
AMERICANS WITH DISABILITIES ACT (ADA).**

196.    A public entity may not, in determining the site or location of a facility, make

selections

> (i) That have the effect of excluding individuals with disabilities from,
> denying them the benefits of, or otherwise subjecting them to
> discrimination; or

> (ii) That have the purpose or effect of defeating or substantially impairing
> the accomplishment of the objectives of the service, program, or activity
> with respect to individuals with disabilities. 28 *CFR* Section 35.130(b)(4).

197.    Further, a public entity shall make reasonable modifications in policies, practices,

or procedures when the modifications are necessary to avoid discrimination on the basis

of disability, unless the public entity can demonstrate that making the modifications would

fundamentally alter the nature of the service, program, or activity. 28 *CFR* Section 35.130(b)(7).

198.    As relevant to the instant action, the hearing before the Township of Voorhees

Planning Board, and as applied in connection with land use reviews, municipalities must be

cognizant of potential modifications and can "change, waive or make exceptions in their zoning

rules," as the United States Circuit Court of Appeals recognized in *Hovsons, Inc. v. Township of

Brick*, 89 *F. 3d* 1096 (3d Cir. 1996).

199.    Unreasonable accommodations, as relevant to the instant Complaint, are ones that

involve undue financial burdens, undue hardship, or require a fundamental alteration to the

proposed program, facility, activity, ordinance, or statute.

200.    *Section* 156.018(G) of the Township of Voorhees Land Use Ordinance provides,

*inter alia*, in connection with a change of use review, the Planning Board may condition a change

of use approval upon compliance with any reasonable condition not in violation with the terms of this chapter or other applicable local, state, or federal law.

201.    During Affinity's presentation before the Township of Voorhees Planning Board, being cognizant of the reasonable accommodation component in the context of the ADA and the land use provision set forth at *Section* 156.018(G), acknowledged the Planning Board's authority to impose a limitation on the number of patients.  If imposed by the Planning Board, such a condition would constitute a reasonable accommodation consistent with the mandate of the ADA, in light of Board member comments.  Specifically, during the September 23, 2020 hearing before the Planning Board, Affinity, through its Managing Member, acknowledged the Planning Board's authority to impose a reasonable limitation on the number of patients Affinity.

202.    During Affinity's counsel's closing comments on October 14, 2020, he commented upon the imposition of what would be a reasonable accommodation under the ADA, a limitation on the number of patients Affinity would be permitted to treat.  Without raising the specter of a possible violation of the ADA, Affinity's counsel advanced the argument solely as a function of the Planning Board's authority under *Section* 156.018(G). Specifically, Affinity's counsel stated:

> Keep in mind, that under your ordinance, you can establish reasonable conditions related to this particular use. That's in your ordinance.

Affinity's counsel returned to this point later in his closing comments, though now couched in the context of the United States District Court decision in *Metro Treatment Of Maine v. City Of Bangor* (D. Me. 2016), commenting:

> There is case law that suggests, there's federal case law, especially out of the … United States District Court …of the District of Maine, the case called Metro, that basically says that … you can set limits on patients and if, in fact, there needs to be an expansion, the applicant has [to] come back and be able to establish the need for an expansion. …[It] gives you that authority to impose or to ask for that sort of condition, reasonable conditions.

203.    Affinity's Counsel's closing commentary as set forth in Paragraph 202, *supra*, along with Affinity's Managing Member's acknowledgement of the Planning Board's authority during his September 23, 2020 testimony, Paragraph 201, *supra*, provided the Township of Voorhees Planning Board with a reasonable accommodation that would not fundamentally alter the nature of the service, program, or activity offered by Affinity to its disabled patients suffering from OUD.

204.    Notwithstanding Affinity's recognition and acknowledgment of the Township of Voorhees Planning Board's ability and authority to impose a limitation on the number of patients as a reasonable accommodation, in the form of a "reasonable condition" as provided for by *Section* 156.018(G), that offer went ignored by the aforesaid Planning Board as evidenced by the colloquy between Stuart Platt, Esq., the Board's Solicitor, and Affinity's counsel:

> MR.  PLATT:        Mr. Reale, you talked about conditions the Board can set, limits on the number of patients. Is the applicant proffering that you would agree to a limitation of 275 patients per day?
>
> MR.  REALE:        It's a little  --  the  answer is probably yes, but I have to get there a little different way, Mr. Platt.
>
> MR. PLATT:        The second question I have is –
>
> MR. REALE:        I didn't answer the first one.
>
> MR. PLATT:        The  second  question  I  have  for  you  in  terms  of conditions is, are there any other conditions that your client would proffer or agree to on this application?
>
> MR.  REALE:        Well, I haven't had -- I'll answer the second question first, Mr. Chairman and Members of the Board.  I haven't had those sort  of discussions with my client as to what else there would be.  Because the major thrust here is, to answer Mr. Platt's question, the  major thrust here has been, what's the intensity of the use. Because that's the way we think about it in the context of land use. So in light of -- and let me cite the case so that we have the record clear. Metro Treatment of Maine, LP, versus City of -- I forgot the name of the city. Mr. Platt, do you have it at our disposal? The Metro case?

MR.  PLATT:          I do not.

MR.  REALE:          Okay.  Oh, Bangor.  I forgot.  That's right.  I forgot.
It's Bangor, versus the City of Bangor.  It is a [D]istrict of Maine, actually
it's  a District Court of Maine case from 2016.  It has a citation, but it's only
to the local docket.  It's not, it's not -- I don't have a reporter citation.

MR.  PLATT:          You know, Skip, I just asked you if your client would
agree   to any conditions.

MR.  REALE:          Yeah.

MR.  PLATT:          I don't know why you're citing case law.

MR.  REALE:          You asked me two questions. And the first question
-- the second question is, I haven't discussed with the client any conditions
other than population limits by way of patients.  But I think that I can, in
fact, represent that, based on the testimony, if the Board imposed the
condition  of 275 patients, that is consistent with the testimony by the client.
So the   answer to that question is yes.

MR.  PLATT:          Do you believe that it would be reasonable for this
Board, if it wanted to, to impose a condition on the hours of operation?

MR.  REALE:          I think that's where the Board becomes -- runs afoul
of Department of Health regulations as it relates to the regulations on the
practice of medicine.

MR.  PLATT:          So  you're  saying  this  Board cannot  impose, as
a reasonable condition, or if it did impose it would be an unreasonable
condition, a specific limitation on the hours of operation.

MR.  REALE:          Without  knowing  what  that  may  look  like,  my
general answer would be that the applicant would probably find that type
of condition to be unreasonable under the circumstances, given the nature
of the practice.

MR.  PLATT:          So, for instance, if this Board said, well, the medical
use is -- medical office, remember, this is an office zone, the medical
office, we feel that, you know, imposing a reasonable condition would be,
you know, 9:00 to 5:00, 9:00 to 6:00, Monday through Friday, some hours
on, you know, 9:00 to 12:00 on Saturday, that's not something that your
client would agree to?

MR.  REALE:       Oh, I can say categorically no, because the time of the operation is driven by the medicine and the need of the patient.

MR.  PLATT:       So you believe that if the Board were to approve this and impose an hours of operation consistent with medical offices, that it believes to be fair and reasonable, you would believe that they don't have that power? I'm just asking you. I'm not  --

MR.  REALE:       Oh, I  didn't say they don't have the power to impose that. I'd say I believe that that would be an unreasonable condition.

MR.  PLATT:       Okay.

MR.  MARTIN:      It's  governed by 42-CFR, our hours of operation.

MR.  REALE:       I  apologize for Mr. Martin jumping in, but he does, in fact, cite what the CFR rates as relates to hours of operation.

MR.  PLATT:       Yeah, that's fine. But, you know what? I'm talking to  a  land-use attorney, and we're talking about land use.  And you talked about, several times in your summation, in terms of imposing reasonable conditions. And I just wanted to get to the heart of what you thought. Because a lot of times in land-use applications, hours of operation can be imposed, they can be conditions of approval, and you're telling me, no, you can't, and that's your position.  I'm not saying I agree with you.  I'm not saying you're correct. I'm not saying Mr. Martin's correct. I just wanted to hear from you on that issue.

MR.  REALE:       Again, I want to be clear, Mr. Platt. I'm not saying that the Board doesn't have the authority to do that. I'm saying that, were they to do that, that the position of the applicant would be, is that, given the medicine and the methodology by which these patients are treated, the applicant would find that and believe that to be an unreasonable condition given the nature of the practice.

MR.  PLATT:       You mean given the practice of operations?

MR.  REALE:       I'm sorry. I don't know that I understood that, sir.

MR.  PLATT:       Well, I mean, are you saying that people can't receive methadone treatment after 9:00 o'clock in the morning? Because I haven't heard any testimony to that effect.

MR.  REALE:       Well, the nature of the practice and the nature of the testimony is that, individuals who are in active treatment are receiving the medication early in the morning so that they can continue to function

throughout the day, because that's the reason why the medication is given in the first place, is to facilitate the ability of these individuals to be active participants in the function of society. If the medicine were different, and the fact that the need of the patient were different, then, yes, the hours of operation would be different. But this is driven by the medicine.

MR. PLATT:        All right. Okay, thank you, Mr. Reale.  Any other conditions your client would agree to at this point?

MR. REALE:        None that I can -- none that I'm authorized to discuss at this point, because, quite frankly, I haven't discussed anything other than patient volume.

MR. PLATT:        Well, this is your sort of day, well, at least your day before the Board.  Okay. Thank you...

205.    Unlike the reasonable accommodation offered by Affinity to limit patient loads, the condition advanced by Stuart Platt, Esq. in his capacity as Panning Board Solicitor, was an unreasonable accommodation, in violation of Title II of the ADA, as well as 28 *CFR* Section 35.130(b)(7), in that, the "condition" restricting the hours of operation would create an undue hardship upon Affinity's patients and would result in a fundamental alteration to the proposed program, facility, and activity.

**THE DELIBERATION AND DECISION BY THE TOWNSHIP OF VOORHEES PLANNING BOARD IN CONNECTION WITH AFFINITY'S CHANGE OF USE REVIEW APPLICATION EVIDENCED AN INTENT TO DISCRIMINATE AGAINST AFFINITY, DR. BROWN, AND THEIR PATIENTS IN VIOLATION OF THE ADA AND SECTION 504 OF THE REHABILITATION ACT.**

206.    On October 14, 2020, at the conclusion of the hearing and after Affinity's Counsel's closing comments the Township of Voorhees Planning Board proceeded to deliberations with the assistance of Stuart Platt, Esq., in his role as Planning Board Solicitor.

207.    The deliberations of the Township of Voorhees Planning Board were conducted in a manner and method to effectuate the continued discrimination of Affinity and its patients in violation of the ADA, Section 50 of the Rehabilitation Act and the New Jersey LAD.

208.    In a clear misstatement of the procedural history of Affinity's Change of Use Review Application, Stuart Platt, Esq., again in his capacity as Planning Board Solicitor, reported to the Planning Board:

> So, Mr. Reale and his client, as we've seen the evidence, they filed the application because they believed that it required a change of use approval under our code, and I've cited the sections, and they also sought a site-plan waiver as well. Their application. When they asked at the first hearing, they don't know why they're here; well, they're here because they applied for a change of use approval because, fundamentally, they had to believe that whatever use was previously operating at these suites was different than the use that was being proposed. Change of use. Can't get any more fundamental than that. And so they applied for a change of use approval, and for waiver of site plan under the --our code.

209.    Stuart Platt, Esq.'s comment to the Planning Board was a clear misstatement of the events that compelled Affinity to seek the Planning Board's review pursuant to *Section* 156.018. As set forth in Paragraph 34, *supra*, Affinity was advised by Jaclyn Bradley, the Township Zoning Officer, it would have to seek a change of use review before the Planning Board.  As Ms. Bradley wrote, *inter alia*, in her December 11, 2020 email communication to Ron Martin, Affinity's Managing Member:

> Since the proposed change of use appears to be significantly different than the previously permitted uses on this site, I believe that approval for the Change of Use must be obtained from the Planning Board, per Section156.018 of the Voorhees Township Unified Land Development Ordinance.

210.    Further, during the afore-described deliberations, the Township of Voorhees Planning Board raised, for the first time, the existence of other Zoning Districts within the Township of Voorhees where Affinity's program would be a permitted use, when Planning Board Member DiNatale, the Township of Voorhees' Economic Development Director, had the following exchange with Stuart Platt, Esq., the Planning Board Solicitor:

MR. DiNATALE:   Stuart, in my 20 years on this Planning Board, and now as the director of economic development, I did see a lot of applications coming in front of me for use, and I give example as New Jersey Trailer on 561, commercial use. We had an applicant come in to us, to the Zoning Board, zoning office, and wanted to put a glass replacement, windshield glass replacement there, commercial use, retail commercial use. The application was denied through the zoning officer because that zoning code for that zone did not specifically say the words auto glass replacement. I mean, it was kind of obvious to me that retail, commercial. But I was told, and this is my question to you, if the zone doesn't specifically call out a use, this specific application is a methadone clinic, which I find coincidental that his first two applications neglected to put that terminology in it, but then when questioned, this application does recognize the methadone clinic. Since we do have other areas in the town that specifically call for clinic, medical clinics, is that a determining factor for us to consider?

MR. PLATT: So it is a factor for you to consider, Mr. DiNatale, and it is true. It's sort of a fundamental premise of land-use law in New Jersey, at least, that if a use is not expressly permitted, it is prohibited.

211.     Still later in the Planning Board's deliberations, Planning Board Member DiNatale returned to the issue of other potential zoning districts within the Township of Voorhees he first raised with Mr. Platt, as described in Paragraph 210, *supra*, when he stated:

We do have other sections in town that permit a clinic. If we didn't have that, different story, but we do have that. So I'll make a motion to deny this application as an approved use ...

212.     The position expressed by Planning Board Member DiNatale was echoed by other members of the Planning Board, including its Chairperson, who stated:

As Mr. DiNatale says, we have zones specifically assigned to a clinic for a particular reason, and it's based on intensity of use. Which I find the intensity of use, the hours of operation, and the vagueness of the intensity to be everything but a medical office. So for those reasons, I vote yes to the motion.

213.     Planning Board Member Nicini, in his comments, identified the other zoning districts as first identified by Planning Board Member DiNatale. In his remarks, Mr. Nicini stated:

> I would like to second that motion on disapproval, based on the fact also that I don't believe it's an O1 Zone. It's more appropriate for the MB or the TC Zone.

214. The fact that Voorhees Township has other zoning districts in which Affinity could locate does not constitute a rational or justifiable reason to deny an application. A denial of Affinity's Change of Use Review Application predicated upon the existence of other available Zoning Districts violates the protections afforded Affinity and its disabled patients pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act, as the record before the Planning Board was devoid of any evidence that Affinity or its disabled patients constituted a significant risk, in that, Affinity presented severe and likely harms to the community that are directly associated with the operation of its program.

215. A zoning provision that discriminates against Opioid Treatment Programs violates the ADA even if it merely provides a location restriction rather than an outright ban or offers a process for relief from that restriction.

216. Affinity suffered irreparable harm as a result of a denial of its Change of Use Review Application predicated upon the availability of other zoning districts in which its facility could also be located.

217. The Town Center Zoning District (TC) was one of the municipal zoning districts identified as being more appropriate for location of Affinity. As relevant to the instant action, *Section* 152.132(K),(L) of the Township of Voorhees Municipal Land Use Ordinance identifies the following, *inter alia*, as permitted uses within the Town Center Zoning District:

> Nursery and pre-schools, kindergartens and elementary and secondary schools; and Medical and dental clinics, nursing homes, child day care centers and hospitals.

218.     The Township of Voorhees Planning Board, through its Members and Board Professionals, engaged in active and intentional discrimination against Affinity, Dr. Brown, and their disabled patients through the last-minute injection of possible alternative zoning districts wherein Affinity's facility would also be permitted as evidenced by:

      A. The Town Center Zoning District is located immediately across the street from the Osage Elementary School;

      B. The daycare center referenced and identified during the hearing as being a source of concern is located within the Town Center Zoning District;

      C. The Towns Center Zoning District includes three (3) Senior Citizen Complexes, a branch of the Camden County Library; and Residential neighborhoods.

219.     The Change of Use Review provision of *Section* 156.018 of the Township of Voorhees Municipal Land Use Ordinance only requires an applicant, such as Affinity, to establish that its proposed use is identical to or substantially similar to the immediate prior use.

220.     While *Section* 156.018 of the Township of Voorhees Municipal Land Use Ordinance places the burden on the applicant to present testimony as to the identical or substantially similar nature of the intended use, it does not specify or limit how an applicant meets this requirement. *Section* 156.018 does not require the use of a professional planner.

221.     During its presentation before the Township of Voorhees Planning Board, as discussed in Paragraphs 170, 171, and 172, *supra*, Affinity offered the testimony of Dr. Gregory J. Hobelmann, M.D., proffered and accepted by the Township of Voorhees Planning Board as an expert witness with respect to the identification, care and treatment, and the nature of the programs and medical practices dealing with opioid illnesses, opioid disorders.

222.     During Affinity's presentation before the Township of Voorhees Planning Board, as discussed in Paragraphs 170, 171, and 172, *supra*, it offered the testimony of Dr. Daniel J. Edwards, D.O., a Diplomate in both the American Board of Emergency Medicine and American

Board of Addiction Medicine. Dr. Edwards, Board Certified in Addiction Medicine, was proffered and accepted by the Township of Voorhees Planning Board as an expert witness with respect to the nature of the programs and medical practices dealing with opioid illnesses, opioid disorders.

223.    Notwithstanding the expert testimony offered by Dr. Hobelmann and Dr. Edwards that the care and treatment of those suffering from Opioid Use Disorder is the practice of medicine, Stuart Platt, Esq., Planning Board Solicitor, in his closing commentary to the members of the aforesaid Planning Board, provided the following comments:

> Notably, the applicant did not produce a planner, but did have testimony from at least two physicians that talked about, to some extent the medical use, and to some extent the operations.  But I leave it to this Board to determine whether or not you believe that you have sufficient information, or if the information that you've been provided establishes that it is, in fact, a permitted use.  And in order to determine that permitted use, we must look to the intent of the legislative body of this Township, Mayor and Committee, we have Deputy Mayor Ravitz who's a member of the -- the Class III Member of the committee that serves on this Board.  So you have to determine if, based upon all the evidence, that this outpatient opioid treatment center slash clinic, as they've described it, is, in fact, a medical office in the O1 Zone, within the purpose and intent of that ordinance which states, again, the purpose and intent of the O1 Office 1 Zone is to provide for office uses on small lots, and which shall create a transition zone between residential uses and more intensive commercial or industrial uses. That is really your initial task, the first fundamental question.
> You've gotten the opinion from our planner, expert, and you know what he concluded, and you also know what he concluded as far as the site-plan waiver.  I don't have to recite that.  You've heard his testimony.  The applicant did not produce a planner, and provided no such testimony on the land-use planning issues which they were told about from the beginning.

224.    The commentary and closing statements by Stuart Platt, Esq., Planning Board Solicitor, as set forth in Paragraph 223, *supra*, created, reinforced, and failed to correct the false impression that Affinity was required to present a professional planner to address the nature of the use, which Platt characterizes as the "land-use issues."

225.    Further, the commentary and closing statements by Stuart Platt, Esq., Planning Board Solicitor, as set forth in Paragraph 223, *supra*, were designed and intended to affect the weight to be afforded the expert medical testimony of Dr. Hobelmann and Dr. Edwards, vis-a-vis that of the Planning Board Engineer, as to the "land-use issues."

226.    Stuart Platt, Esq., in his capacity as Board Solicitor, recommended to the Chairperson and members of the Board an approach to acting on the pending application that contained two (2) distinct steps: First, was a decision on the threshold question whether Affinity's use constituted a medical office and a permitted use within the Office-1 Zoning District.

227.    As part of the event described in Paragraph 226, *supra*, Stuart Platt, Esq., Board Solicitor, stated:

> So you can break it down, Mr. Chairman, into two votes. One, you can vote on whether or not the proposed facility and treatment center is, in fact, a medical office and a permitted use within the O1 Zone. If you -- if the vote says that it is, we can move on to the site-plan waiver, and we can vote on that. If you vote that it is not a permitted use, then essentially the application becomes denied, because this Board does not have jurisdiction to grant approvals to uses that are not permitted in any zone.

228.    The motion language proposed by Stuart Platt, Esq., Board Solicitor, as set forth in Paragraph 227, *supra*, addressed the threshold question as to whether Affinity's proposed use is a medical office.

229.    Given the direction provided by Stuart Platt, Esq., at no time did the Township of Voorhees Planning Board review or consider taking any action that would include reasonable accommodation of Affinity and its patients.

230.    On October 14, 2020, the Planning Board, in a unanimous vote of its members, denied the approval of Affinity's Change of Use Review Application on the grounds that Affinity is not a "medical office" thus it could not be allowed to operate in the Office-1 Zoning District.

231.    Effective January 30, 2001, the <u>New Jersey Municipal Land Use Law</u>, *N.J.S.A.* 40:55d-1, *et seq.*, recognized that facilities offering outpatient methadone maintenance services were ancillary to or adjunct to a medical practice, but that, notwithstanding, a municipality could adopt an ordinance changing the classification of the medical use for zoning purposes. Specifically, *N.J.S.A.* 40:55d-66.10, <u>Methadone clinic deemed business for zoning purposes,</u> provides:

> A municipality may provide within the local zoning ordinance that a facility offering outpatient methadone maintenance services... shall be deemed to be a 'business' or commercial operation or functional equivalent thereof and shall not be construed, for zoning purposes, as ancillary or adjunct to a doctor's professional office.

The Township of Voorhees has not adopted such an ordinance.

232.    As part of the Township of Voorhees Planning Board, its Members and Board Professionals' active and intentional discrimination against Affinity, Dr. Brown, and their disabled patients, the aforesaid Board, its members and Board Professionals disregarded the provisions of *N.J.S.A.* 40:55D-66.10, which recognizes outpatient providers such as Affinity are ancillary or adjunct to a doctor's professional office.  The intent to discriminate, in violation of <u>New Jersey Municipal Land Use Law</u>, *N.J.S.A.* 40:55D-1, *et seq.*, is further evidenced by the absence of any local land use ordinance adopted by the Township of Voorhees pursuant to the provisions of *N.J.S.A.* 40:55D-66.10, as set forth in Paragraph 231, *supra.*

233.    The <u>New Jersey Municipal Land Use Law</u>, *N.J.S.A* 40:55D-1, *et seq.*, requires local boards to memorialize their decisions by adopting formal written resolutions.

234.    As the Voorhees Township Planning Board denied Affinity's application on October 14, 2020, pursuant to *N.J.S.A.* 40:55D-10, it was required to adopt the memorializing resolutions not later than November 28, 2020.

235.    Notwithstanding the statutory requirement described in Paragraph 231 and 232, *supra*, the Voorhees Township Planning Board has failed to adopt the requisite memorializing resolution.

236.    The failure to adopt the resolution described in Paragraphs 231, 232 and 233, *supra*, is further evidence of an intent to discriminate against Affinity, in violation of the ADA and Section 504 of the Rehabilitation Act of 1973, as absent a formal resolution, Affinity is denied the ability to appeal the Planning Board's decision to the Superior Court of New Jersey through a Complaint in lieu of Prerogative Writ, as provided by *Rule* 4:69, <u>Actions In Lieu Of Prerogative Writs</u>, of the Rules Governing the Courts of New Jersey.

## VI.    <u>CAUSES OF ACTION</u>

### <u>COUNT ONE</u>
### (Violation of Title II of the ADA)
### Disparate Treatment

237.    Plaintiffs Affinity and Dr. Brown repeat the allegations contained in Paragraphs 1 through 236, inclusive, of this Complaint, as if set forth at length herein.

238.    The American with Disabilities Act (the "ADA") provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the service, program, or activity of a public entity, or be subjected to discrimination by any such entity. The ADA makes it unlawful for a public entity, in determining the site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination. 28 *C.F.R.* 35.130 (b)(4).

239.    Affinity's patients are qualified persons under the ADA with disabilities that substantially impair one or more major life activities.

66

240.    To be admitted to any part of Affinity's facility the patient must be diagnosed as suffering from drug or alcohol addiction, and participate or agree to participate in substance abuse treatment.

241.    While being treated at Affinity, patients are not illegally using controlled substances. As a result, Affinity's patients are "qualified persons with disabilities" within the meaning of the ADA, 42 *U.S.C.* 1202(2) and 28 *C.F.R.* 35.104

242.    The Defendants, the Township of Voorhees, Township of Voorhees Zoning Board, and Township of Voorhees Planning Board, are qualifying public entities within the meaning of the ADA, 42 *U.S.C.* 12131(1)(A).

243.    *Section* 12132 of the ADA constitutes a general prohibition against discrimination on the basis of disability by public entities.

244.    The Defendants have violated, and are continuing to violate the ADA, by, *inter alia*: (1) refusing to provide reasonable accommodations to disabled individuals; (2) engaging in selective enforcement of provisions of the Township of Voorhees Municipal Land Use Ordinance; (3) allowing prejudice against disabled individuals to dictate the outcome of zoning decisions and hearing; and (4) discriminating against disabled individuals.

WHEREFORE, Plaintiffs demands judgment in its favor and against the Defendants, jointly and severally, and requests that the Court grant the following relief:

i. Declaratory relief stating that the Defendants' discriminatory zoning decisions and improper denials of Plaintiff Affinity's Zoning Permit Applications constituted violations of the ADA and that Plaintiffs and its patients are entitled to reasonable accommodations to facilitate the operation of Affinity as planned;

ii. Preliminary and permanent injunctive relief permitting Plaintiffs' operation of their facility as planned, and enjoin the Defendants from obstructing or interfering with Plaintiffs' operation thereof;

iii. Compensatory damages;

iv. Attorneys' fees and costs; and

v. Such other and further relief as the Court deems necessary and appropriate.

## COUNT TWO
### (Violation of Title II of the ADA)
### Disparate Impact

245.    Plaintiffs Affinity and Dr. Brown repeat the allegations contained in Paragraphs 1 through 244, inclusive, of this Complaint, as if set forth at length herein.

246.    The American with Disabilities Act (the "ADA") provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the service, program, or activity of a public entity, or be subjected to discrimination by any such entity. The ADA makes it unlawful for a public entity, in determining the site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination. 28 *C.F.R.* 35.130 (b)(4).

247.    Affinity's patients are qualified persons under the ADA with disabilities that substantially impair one or more major life activities.

248.    To be admitted to any part of Affinity's facility the patient must be diagnosed as suffering from drug or alcohol addiction, and participate or agree to participate in substance abuse treatment.

249. While being treated at Affinity, patients are not illegally using controlled substances. As a result, Affinity's patients are "qualified persons with disabilities" within the meaning of the ADA, 42 *U.S.C.* 1202(2) and 28 *C.F.R.* 35.104

250. The Defendant Township of Voorhees and Township of Voorhees Zoning Board, and Township of Voorhees Planning Board are qualifying public entities within the meaning of the ADA, 42 *U.S.C.* 12131(1)(A).

251. *Section* 12132 of the ADA constitutes a general prohibition against discrimination on the basis of disability by public entities.

252. The Defendants have violated, and are continuing to violate the ADA, by, *inter alia*: (1) refusing to provide reasonable accommodations to disabled individuals; (2) engaging in selective enforcement of provisions of the Township of Voorhees Municipal Land Use Ordinance; (3) allowing prejudice against disabled individuals to dictate the outcome of zoning decisions and hearing; and (4) discriminating against disabled individuals.

WHEREFORE, Plaintiffs demands judgment in its favor and against the Defendants, jointly and severally, and requests that the Court grant the following relief:

i. Declaratory relief stating that the Defendants' discriminatory zoning decisions and improper denials of Plaintiff Affinity's Zoning Permit Applications constituted violations of the ADA, and that Plaintiffs and its patients are entitled to reasonable accommodations to facilitate the operation of Affinity as planned;

ii. Preliminary and permanent injunctive relief permitting Plaintiffs' operation of their facility as planned, and enjoin the Defendants from obstructing or interfering with Plaintiffs' operation thereof;

iii. Compensatory damages;

iv. Attorneys' fees and costs; and

v. Such other and further relief as the Court deems necessary and appropriate.

## COUNT THREE
### (Violation of Title II of the ADA)

253. Plaintiffs Affinity and Dr. Brown repeat the allegations contained in Paragraphs 1 through 252, inclusive, of this Complaint, as if set forth at length herein.

254. The American with Disabilities Act (the "ADA") provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the service, program, or activity of a public entity, or be subjected to discrimination by any such entity. The ADA makes it unlawful for a public entity, in determining the site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination. 28 C.F.R. 35.130 (b)(4).

255. Affinity's patients are qualified persons under the ADA with disabilities that substantially impair one or more major life activities.

256. The Township of Voorhees violated Title II of the Americans with Disabilities Act by failing to provide AFFINITY a reasonable modification to allow it to locate its proposed OTP clinic in Township of Voorhees, and such intentional actions harmed and continue to harm AFFINITY and the persons with disabilities AFFINITY intends to serve.

257. Because of the Township of Voorhees's intentional discriminatory reaction and behavior, AFFINITY has expended time, financial resources, and has lost the opportunity to conduct its business and provide a much-needed service at the proposed location.

258. AFFINITY has suffered economic injury from the Township of Voorhees and its subordinate Boards, agents, employees' violations of the ADA.

WHEREFORE, Plaintiffs demands judgment in its favor and against the Defendants, jointly and severally, and requests that the Court grant the following relief:

i.   Declaratory relief stating that the Defendants' discriminatory zoning decisions and improper denials of Plaintiff Affinity's Zoning Permit Applications constituted violations of the ADA, and that Plaintiffs and its patients are entitled to reasonable accommodations to facilitate the operation of Affinity as planned;

ii.   Preliminary and permanent injunctive relief permitting Plaintiffs' operation of their facility as planned, and enjoin the Defendants from obstructing or interfering with Plaintiffs' operation thereof;

iii.   Compensatory damages;

iv.   Attorneys' fees and costs; and

vi.   Such other and further relief as the Court deems necessary and appropriate.

## COUNT FOUR
### (Violation of the Rehabilitation Act of 1973)

259.   Plaintiffs Affinity and Dr. Brown repeat the allegations contained in Paragraphs 1 through 258, inclusive, of this Complaint, as if set forth at length herein.

260.   The Rehabilitation Act, 29 *U.S.C.* 791, *et seq.*, provides that no qualified individual with a disability shall, solely by reason of her or his disability, be excluded from participation in or be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance. 29 *U.S.C.* 794 (a)

261.   The Township of Voorhees receives federal financial assistance, including federal grant funds such as the Community Development Block Grant Program, which is funded by the United States Department of Housing and Urban Development.

262.     Section 508 of the Rehabilitation Act defines "programs or activity" as "all of the operations" of specific entities, including "a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 *U.S.C.* 794(b)(1)(A),

263.     Zoning decisions by a municipality are normal functions of a governmental entity and thus are covered by the Rehabilitation Act.

264.     Plaintiff's patients are qualified persons under the Rehabilitation Act with disabilities that substantially impair one or more major life activities.

265.     To be admitted to any part of Affinity's facility, the patient must be diagnosed as suffering from opioid addiction, and participate or agree to participate in substance abuse treatment.

266.     While being treated at Affinity, patients are not illegally using controlled substances. As a result, Affinity's patients are "qualified persons with disabilities" within the meaning of the ADA, 42 *U.S.C.* 1202(2) and 28 *C.F.R.* 35.104

267.     The Defendants are qualifying public entities within the meaning of the Rehabilitation Act.

268.     Section 508 of the Rehabilitation Act constitutes a general prohibition against discrimination on the basis of disability by public entities.

269.     The Defendants have violated and are continuing to violate the Rehabilitation Act by, *inter alia*: (1) refusing to provide reasonable accommodations to disabled individuals; (2) engaging in selective enforcement of provisions of the Township of Voorhees Municipal Land Use Ordinance; (3) allowing prejudice against disabled individuals to dictate the outcome of zoning decisions and hearings; (4) interfering and delaying the planning, hiring, and other normal processes related to opening this business; and (5) discriminating against disabled individuals.

WHEREFORE, Plaintiff demands judgment in their favor and against the Defendants, jointly and severally, and request that the Court grant the following relief:

i.   Declaratory relief stating that the Defendants' discriminatory zoning decisions and improper denials of Plaintiff Affinity's Zoning Permit Applications constituted violations of the ADA and that Plaintiffs and their patients are entitled to reasonable accommodations to facilitate the operation of Affinity as planned;

ii.  Preliminary and permanent injunctive relief permitting Plaintiff Affinity's operation of its facility as planned, and enjoin the Defendants from obstructing or interfering with Plaintiffs' operation thereof;

iii. Compensatory damages;

iv.  Attorneys' fees and costs; and

v.   Such other and further relief as the Court deems necessary and appropriate.

## COUNT FIVE
### (Violation of 42 *U.S.C.* Section 1983)

270.   Plaintiffs Affinity and Dr. Brown repeat the allegations contained in Paragraphs 1 through 269, inclusive, of this Complaint, as if set forth at length herein.

271.   Under color of State law, the Township of Voorhees, the Voorhees Township Planning Board, their employees and agents improperly applied zoning laws to effectuate discrimination and denied Plaintiff Affinity's several Zoning Permit Applications and its Change of Use Review Application.

272.   The Township of Voorhees, the Voorhees Township Planning Board, their employees and agents' illegal and improper actions are not roughly proportional to the public good sought to be achieved and are grossly disproportionate to any asserted public interest because they

unduly deprive Plaintiffs of their constitutional rights far beyond what is reasonable, legal, or necessary.

273.    The Township of Voorhees, Voorhees Township Planning Board, their employees, and agents' actions are illegal because they prevent, frustrate, and impede Plaintiffs' by-right use and enjoyment of its Facility.

274.    The Township of Voorhees, Voorhees Township Planning Board, their employees and agents' conduct was arbitrary, capricious, unreasonable, malicious, discriminatory, in bad faith, and shocks the conscience.

275.    Accordingly, the Township of Voorhees, Voorhees Township Planning Board, their employees and agents' actions violate the Fourteenth Amendment to the United States Constitution and 42 *U.S.C.* Section 1983. The Defendant's acts in making discriminatory zoning decisions and denying Plaintiff's Zoning Permit violated Plaintiff's right to substantive due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution by arbitrarily, irrationally and unreasonably interfering with Plaintiff's right to use its facility.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Defendants, jointly and severally, and request that the Court grant the following relief:

(i)    Declaratory relief stating that the Defendants' discriminatory zoning decisions and improper denials of Plaintiff Affinity's Zoning Permit Applications and its Change of Use Review Application constituted violations of the Constitution and 42 *U.S.C.* § 1983 and that Plaintiffs and its patients are entitled to reasonable accommodations to facilitate the operation of the Facility as planned;

(ii)    Preliminary and permanent injunctive relief permitting Plaintiffs' operation of the Facility as planned, and enjoining the Defendants from obstructing or interfering with Plaintiffs' operation thereof;

(iii)    Compensatory damages;

(iv)    Punitive damages;

(v)    Attorneys' fees and costs; and

(vi)    Such other and further relief as the Court deems necessary and appropriate.

## COUNT SIX
**(Substantive Due Process –Fifth and Fourteenth Amendments and 42 *U.S.C.* Section 1983)**

276.    Plaintiffs Affinity and Dr. Brown repeat the allegations contained in Paragraphs 1 through 275, inclusive, of this Complaint, as if set forth at length herein.

277.    The Township of Voorhees, the Voorhees Township Planning Board, their employees and agents' acts in making discriminatory zoning decisions and denying Plaintiff Affinity's several Zoning Permit Applications and its Change of Use Review Application violated Plaintiffs' right to substantive due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution by arbitrarily, irrationally and unreasonably interfering with Plaintiffs' right to use its Facility.

278.    The Township of Voorhees, Voorhees Township Planning Board, their employees and agents' actions were undertaken in bad faith and shock the conscience.

279.    Plaintiffs, having acquired a leasehold interest in the Property, have the right to the use and enjoyment thereof.

280.    That right includes the ability to develop and operate the Facility.

281.    Plaintiffs have a distinct and definite investment-backed expectation in their ability to use and enjoy the Property and Facility.

282.    The Township of Voorhees, Voorhees Township Planning Board, their employees and agents' actions, which were arbitrary, capricious, illegal and conscience-shocking, directly interfered with Plaintiffs' legitimate investment-backed expectations.

283.    The Township of Voorhees, Voorhees Township Planning Board, their employees and agents' actions, including their improper denials of Plaintiff Affinity's several Zoning Permit Applications and its Change of Use Review Application, have deprived Plaintiffs of a legally-permitted, economically beneficial use of the property authorized by the Township of Voorhees' Zoning Ordinance.

284.    By virtue of the Township of Voorhees, Voorhees Township Planning Board, their employees and agents' arbitrary, capricious, and unreasonable exercise of its powers, the Defendants have violated the Fifth and Fourteenth Amendments of the United States Constitution and 42 *U.S.C.* § 1983.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Defendants, jointly and severally, and request that the Court grant the following relief:

(i)     Declaratory relief stating that the Defendants' improper zoning decisions and denials of Plaintiff Affinity's Change of Use Review Application constituted violations of the Constitution and 42 U.S.C. § 1983, and that Plaintiff and its patients are entitled to reasonable accommodations to facilitate the construction and operation of the Facility as planned;

(ii)     Preliminary and permanent injunctive relief permitting Plaintiff's construction and operation of the Facility as planned, and enjoining the Defendants from obstructing or interfering with Plaintiff's construction and operation thereof;

(iii)    Compensatory damages;

(iv)    Punitive damages;

(v)     Attorneys' fees and costs; and

(vi)    Such other and further relief as the Court deems necessary and appropriate.

## COUNT SEVEN
### (Equal Protection – Fourteenth Amendment and 42 *U.S.C.* Section 1983)

285.    Plaintiffs Affinity and Dr. Brown repeat the allegations contained in Paragraphs 1 through 284, inclusive, of this Complaint, as if set forth at length herein.

286.    Selective enforcement of a facially valid zoning ordinance violates the Equal Protection Clause of the Fourteenth Amendment.

287.    The Township of Voorhees, Voorhees Township Planning Board, their employees and agents' requiring Plaintiff Affinity to seek a Change of Use Review, pursuant to *Section* 156.018, was discriminatory, in that, the requiring the aforesaid Review constituted selective enforcement of the afore-described provision of the Township of Voorhees Municipal Land Use Ordinance violated Plaintiffs' right to equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution.

288.    The Township of Voorhees, Voorhees Township Planning Board, their employees and agents' intentional selective enforcement of *Section* 156.018 of the Township of Voorhees Municipal Land Use Ordinance was designed, intended, and executed with intent to illegally discriminate against Plaintiffs Affinity and Dr. Brown and their patients.

289.    The selective enforcement of *Section* 156.018 of the Township of Voorhees Municipal Land Use Ordinance by Defendants was irrational and arbitrary.

290.    There was no rational basis for the difference in treatment between Plaintiffs and others similarly situated, including, but not limited to, RCA.

291.    By virtue of the Township of Voorhees, the Voorhees Township Planning Board, their employees and agents' arbitrary, capricious, and unreasonable exercise of its powers, the Defendants have violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and 42 *U.S.C.* § 1983.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Defendants, jointly and severally, and request that the Court grant the following relief:

(i)     Declaratory relief stating that the Defendants' improper zoning decisions and selective enforcement of the provisions of *Section* 156.018 of the Township of Voorhees Municipal Land Use Ordinance constituted violations of the Constitution and 42 U.S.C. § 1983, and that Plaintiff and its patients are entitled to reasonable accommodations to facilitate the operation of the Facility as planned;

(vii)   Preliminary and permanent injunctive relief permitting Plaintiff's operation of the Facility as planned, and enjoining the Defendants from obstructing or interfering with Plaintiff's operation thereof;

(viii)  Compensatory damages;

(ix)    Punitive damages;

(x)     Attorneys' fees and costs; and

(xi)    Such other and further relief as the Court deems necessary and appropriate.

## COUNT EIGHT
### (Violation of State Law)

292.   Plaintiffs Affinity and Dr. Brown repeat the allegations contained in Paragraphs 1 through 291, inclusive, of this Complaint, as if set forth at length herein.

293.   As detailed above, the Township of Voorhees Planning Board was wrong as a matter of law, palpably abused its discretionary authority, and acted in an arbitrary and capricious manner when it denied Plaintiff Affinity's Change of Use Review Application.

294.   Pursuant to the provisions of *N.J.S.A.* 40:55D-26, Referral Powers, "the governing body may by ordinance provide for the reference of any matter or class of matters to the planning board before final action thereon by a … municipal officer having final authority thereon…" *N.J.S.A.* 40:5D-26b.

295.   The delegation of authority to the Planning Board in *Section* 156.018 of the Township of Voorhees Municipal Land Use Ordinance constitutes a referral as authorized by *N.J.S.A.* 40:55D-26b.

296.   The Township of Voorhees Planning Board abused its discretion in denying Plaintiff Affinity's Change of Use Review Application. As detailed above, the denial of the application was without merit and Plaintiff Affinity presented ample evidence to establish that it is a professional medical use consistent with the provisions of *Section* 156.018.

297.   The Township of Voorhees Planning Board is a quasi-judicial body charged with providing applicants with a fair and impartial hearing on matters before it, and whose function is to apply the facts presented at the hearing to the legal requirements so that it may decide whether Plaintiff's Facility complies with the uses permitted by the Zoning Ordinance.

298. In contravention of that obligation, the Township of Voorhees Planning Board ignored the uncontroverted evidence establishing that the Facility is a permitted use in the Office-1 Zoning District as a medical professional office.

299. The Township of Voorhees Planning Board's actions are conscience-shocking and in direct contravention of the MLUL, the Township Ordinance, and the laws of the State of New Jersey.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Defendants, jointly and severally, and request that the Court grant the following relief:

(i)     Declaratory relief stating that the Planning Board's actions were arbitrary, capricious, unreasonable, and in violation of the MLUL, the Township Ordinance, and the laws of the State of New Jersey;

(ii)    Entry of an Order overturning the Planning Board's denial of Plaintiff Affinity's Change of Use Review Application;

(iii)   Preliminary and permanent injunctive relief permitting Plaintiff's construction and operation of the Facility as planned, and enjoining the Defendants from obstructing or interfering with Plaintiff's construction and operation thereof;

(iv)    Compensatory damages;

(v)     Punitive damages;

(vi)    Attorneys' fees and costs; and

(vii)   Such other and further relief as the Court deems necessary and appropriate.

## COUNT NINE
### (Violation of State Law)

300.    Plaintiffs Affinity and Dr. Brown repeat the allegations contained in Paragraphs 1 through 299, inclusive, of this Complaint, as if set forth at length herein.

301.    The Township of Voorhees Planning Board improperly disregarded the competent and uncontroverted testimony of expert witnesses who established that Affinity's proposed operation constituted the practice of medicine, and the public policies in favor of making available treatment facilities, including express statutes *N.J.S.A.* 26:2BB-1; and *N.J.S.A.* 30:6C-1.

302.    The Township of Voorhees Planning Board abused its discretion in denying Plaintiff Affinity's Change of Use Review Application. As detailed above, the denial of the application was without merit and Plaintiff Affinity presented ample evidence to establish that it is a professional medical use consistent with the provisions of *Section* 156.018.

303.    The Township of Voorhees Planning Board is a quasi-judicial body charged with providing applicants with a fair and impartial hearing on matters before it, and whose function is to apply the facts presented at the hearing to the legal requirements so that it may decide whether Plaintiff's Facility complies with the uses permitted by the Zoning Ordinance.

304.    In contravention of that obligation, the Township of Voorhees Planning Board ignored the uncontroverted evidence establishing that the Facility is a permitted use in the Office-1 Zoning District as a medical professional office.

305.    The Township of Voorhees Planning Board's actions are conscience-shocking and in direct contravention of the MLUL, the Township Ordinance, and the laws of the State of New Jersey.

WHEREFORE, Plaintiffs demands judgment in their favor and against the Defendants, jointly and severally, and requests that the Court grant the following relief:

    (i)    Declaratory relief stating that the Township of Voorhees Planning Board's actions were arbitrary, capricious, unreasonable, and in violation of the MLUL, the Township Ordinance, and the laws of the State of New Jersey;

    (ii)    Entry of an Order overturning the Township of Voorhees Planning Board's denial of Plaintiff Affinity's Change of Use Review Application;

    (iii)    Preliminary and permanent injunctive relief permitting Plaintiff Affinity's operation of the Facility as planned, and enjoining the Defendants from obstructing or interfering with Plaintiff Affinity's operation thereof;

    (iv)    Compensatory damages;

    (v)    Punitive damages;

    (vi)    Attorneys' fees and costs; and

    (vii)    Such other and further relief as the Court deems necessary and appropriate.

## COUNT TEN
### (Violation of State Law)

306.    Plaintiffs Affinity and Dr. Brown repeat the allegations contained in Paragraphs 1 through 304, inclusive, of this Complaint, as if set forth at length herein.

307.    The Township of Voorhees Planning Board erred as a matter of law and acted in an arbitrary and capricious manner when it denied Plaintiff Affinity's Change of Use Review Application.

308.    The Township of Voorhees Planning Board improperly disregarded the competent and uncontroverted testimony of expert witnesses who established that Affinity's

proposed operation constituted the practice of medicine, and the public policies in favor of making available such treatment facilities, including express statutes *N.J.S.A.* 26:2BB-1; and *N.J.S.A.* 30:6C-1.

309.    The Township of Voorhees Planning Board improperly disregarded the competent and uncontroverted testimony of Dr. Edwards and Dr. Hobelmann, a leading expert in addiction treatment, which established that Affinity's practice and treatment is the practice of medicine. The Facility would improve patient outcomes through its innovative treatment model, and would help reduce the number of drug and alcohol addicted persons in Sayreville and the surrounding area.

310.    The Township of Voorhees Planning Board improperly disregarded the testimony of multiple expert witnesses that Plaintiff Affinity's proposed use will not have a negative impact on the surrounding community.

311.    The Township of Voorhees Planning Board failed to act properly in its quasi-judicial capacity when it denied Plaintiff Affinity's Change of Use Review Application.

312.    The Township of Voorhees Planning Board's actions are conscience-shocking and in direct contravention of the MLUL, the Township Ordinance, and the laws of the State of New Jersey.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Defendants, jointly and severally, and request that the Court grant the following relief:

(i)     Declaratory relief stating that the Township of Voorhees Planning Board's actions were arbitrary, capricious, unreasonable, and in violation of the MLUL, the Township Ordinance, and the laws of the State of New Jersey;

(ii)    Entry of an Order overturning the Township of Voorhees Planning Board's denial of Plaintiff Affinity's Change of Use Review Application;

(iii)    Preliminary and permanent injunctive relief permitting Plaintiff Affinity's operation of the Facility as planned, and enjoining the Defendants from obstructing or interfering with Plaintiff Affinity's operation thereof;

(iv)    Compensatory damages;

(v)    Punitive damages;

(vi)    Attorneys' fees and costs; and

(vi)    Such other and further relief as the Court deems necessary and appropriate.

## COUNT ELEVEN
### (Violation of New Jersey Law Against Discrimination)

313.    Plaintiffs Affinity and Dr. Brown repeat the allegations contained in Paragraphs 1 through 312, inclusive, of this Complaint, as if set forth at length herein.

314.    The NJLAD, *N.J.S.A.* 10:5-1 *et seq.*, prohibits a "municipality, county or other local civil or political subdivision of the State of New Jersey, or an officer, employee, or agent thereof to exercise the power to regulate land use or housing in a manner that discriminates" on the basis of disability. *N.J.S.A.* 10:5-12.5.

315.    Under the NJLAD, disability means "physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness" or "any mental, psychological or developmental disability ... resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically," *N.J.S.A.* 10:5-5(q), which definition has been construed by the courts to include alcohol and substance dependence.

316.    The Township of Voorhees Planning Board violated Plaintiffs' rights.  It violated the NJLAD by denying Plaintiff Affinity's Change of Use Review Application in contravention of the MLUL and based upon improper discrimination against Plaintiff Affinity and its patients.

317.    The Township of Voorhees Planning Board has exercised its powers to regulate land use in a way that discriminates against disabled persons without justification or cause by preventing the development of an outpatient healthcare facility necessary for their treatment and rehabilitation.

318.    The Township of Voorhees Planning Board's conduct was arbitrary, capricious, unreasonable, malicious and in bad faith, and shocks the conscience.

319.    The Township of Voorhees Planning Board's wrongful actions prohibit Plaintiffs from providing an outpatient treatment facility on a property where it should be permitted to operate, an action that is discriminatory on its face against persons with disabilities, a discrete and insular minority that faces restrictions and limitations and has been subjected to a history of purposeful unequal treatment.

320.    Because of the Township of Voorhees Planning Board's denial of Plaintiff Affinity's Change of Use Review Application, Plaintiffs have expended significant time and financial resources, have lost the opportunity to timely conduct their business and provide a much-needed service, and are incurring substantial damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Defendants, jointly and severally, and request that the Court grant the following relief:

(i)     Declaratory relief stating that the Township of Voorhees Planning Board's actions were arbitrary, capricious, unreasonable, and in violation of the NJLAD;

(ii)    Entry of an Order overturning the Township of Voorhees Planning Board's improper denial of Plaintiff Affinity's Change of Use Review Application;

(iii)    Preliminary and permanent injunctive relief permitting Plaintiff Affinity's operation of the Facility as planned, and enjoining the Defendants from obstructing or interfering with Plaintiff Affinity's operation thereof;

(v)    Compensatory damages;

(vi)    Punitive damages;

(vii)    Attorneys' fees and costs; and

(viii)    Such other and further relief as the Court deems necessary and appropriate.

Dated: January 15, 2021
       Willingboro, New Jersey

Respectfully submitted,

**HELMER, CONLEY & KASSELMAN**

**SAMUEL REALE, JR., ESQUIRE**
(Attorney ID No. 008111976)
600 Beverly-Rancocas Road
Willingboro, New Jersey 08046
Tel: (609) 877-6550

## DEMAND FOR TRIAL BY JURY

Pursuant to *Rule* 38(b) of the Federal Rules of Civil Procedure, Plaintiffs Affinity Healthcare Group Voorhees, LLC, and Dr. Kenneth Brown hereby demand a trial by jury as to all issues so triable in this case.

Dated:   January 15, 2021
    Willingboro, New Jersey

Respectfully submitted,

**HELMER, CONLEY & KASSELMAN, P.A.**

**SAMUEL REALE, JR., ESQUIRE**
(Attorney ID No. 008111976)
600 Beverly-Rancocas Road
Willingboro, New Jersey 08046
Tel: (609) 877-6550